549 So.2d 924 (1989)
Robert Derek FONTENOT, Plaintiff-Appellant,
v.
Paul BOLFA, et al., Defendant-Appellee.
No. 88-656.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1989.
*925 Preston N. Aucoin, Ville Platte, for plaintiff-appellant.
Paul Bolfa, in pro per.
Durant, Pierce & Malone, A. Clay Pierce, Baton Rouge, for Ind. Fire Ins.
Onebane, Donohoe, Richard J. Petre, Jr., Lafayette, for United Fire Ins.
Before GUIDRY, LABORDE and KNOLL, JJ.
LABORDE, Judge.
Plaintiff, Robert Derek Fontenot, seeks recovery of damages for injuries sustained when he was shot with a .20 gauge shotgun by defendant, Paul Bolfa, at the house of J. Wendel Fusilier. Also named as defendants are Independent Fire Insurance Company (Independent), Fusilier's homeowner's insurer, and United Fire & Casualty Company (United), Fusilier's excess insurer. After a trial on the merits, the jury rendered a verdict finding that defendant, Paul Bolfa, was 100% at fault, but awarded no damages to the plaintiff. From this judgment plaintiff appeals. We amend the trial court's judgment to grant an award of $75,000.00 in general damages and $74,050.92 in special damages to plaintiff and affirm as amended.

FACTS
In the early morning hours of June 26, 1986, Paul Bolfa shot Robert Derek Fontenot at close range with a .20 gauge shotgun. The shooting occurred at the Fusilier residence in Ville Platte, Louisiana, while its owner, J. Wendell Fusilier, was away on vacation. At the time, Fusilier's eighteen year old daughter, Lisa, was taking care of the house. She testified that she had dated Bolfa for about four years before the couple broke up in May of 1986. Subsequently, *926 she began dating Fontenot. Fontenot and Bolfa had known each other for years and Fontenot's brother was good friends with Bolfa.
Several hours prior to the shooting, Bolfa, Fontenot and Lisa Fusilier, accompanied by friends, drove back to Ville Platte after spending the evening at A.J.'s Lounge in Opelousas. On the return journey, Bolfa and Fontenot started fighting, apparently over Lisa. Fontenot testified that Bolfa punched him in the face and attempted to hit him again. At this point Fontenot struck Bolfa twice and the fight ended. Bolfa then apologized and the two men shook hands. After this brief altercation, Bolfa and Fontenot returned separately to the Fusilier home. Bolfa arrived first and was lying on the living room sofa when Lisa Fusilier, Fontenot and Todd Monier (a friend of all the parties) entered the house. Fontenot and Monier went to the back of the house while Lisa spoke with Bolfa.
Lisa Fusilier testified that Bolfa was intoxicated and that he was depressed because of the breakup of their relationship. She further testified that as Bolfa left the house, he said he was going to commit suicide. Concerned for his safety, she asked Todd Monier to go after Bolfa to make sure he was all right. Shortly thereafter, Bolfa returned to the Fusilier residence. Upon seeing Bolfa's truck drive up, Fontenot told Lisa to talk with him. Lisa opened the front door and Bolfa entered the house carrying a .20 gauge shotgun. She stated that after he walked into the house he again threatened to commit suicide. Lisa yelled that Bolfa had a gun and within a few seconds Bolfa fired twice at Fontenot, hitting him in the left upper arm with the first shot. Lisa also stated that after Bolfa shot Fontenot he said, "I didn't mean to hurt anybody. I just wanted to kill myself ... I shot my friend."
When the police arrived, Bolfa held the loaded shotgun under his chin and again threatened to commit suicide. He was convinced by the police to put down the shotgun. Fontenot was brought by ambulance to Humana Hospital in Ville Platte and then to Lafayette General Hospital, where surgery was performed on his arm.

NEGLIGENCE
On appeal, plaintiff contends that the jury erred in failing to find any negligence on the part of Lisa Fusilier or J. Wendel Fusilier. We disagree. Under our jurisprudence, a homeowner is not an insurer of the safety of persons lawfully on the premises. Generally, the duty owed by the owner or occupier of a home to a social guest is to avoid reasonably foreseeable danger to the guest and to keep his premises safe from hidden dangers in the nature of traps or pitfalls. Lear v. United States Fire Insurance Co., 392 So.2d 786 (La.App. 3d Cir.1980). Furthermore, our Supreme Court has recognized that there is, generally, no duty to protect others from the criminal activities of third persons. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). Thus, the duty imposed by law on a homeowner does not extend to unanticipated or unforeseeable criminal acts of a third person. Broussard v. Peltier, 499 So.2d 1026 (La.App. 3d Cir.1986); Vertudazo v. Allstate Insurance Co., 542 So.2d 703 (La.App. 4th Cir.1989).
In the instant case, the evidence shows that the criminal shooting of the plaintiff was not reasonably foreseeable. Although Lisa Fusilier was concerned that Bolfa might injure himself, she had no reason to anticipate his violent behavior against Fontenot. She testified as follows:
"Q. Lisa, diddid you have any idea that Paul Bolfa was coming back to that house, uh, to shoot Derek Fontenot?
A. No, sir.
Q. Had he given you any indication at all that he was going to shoot Derek Fontenot?
A. No, sir.
Q. There was nothing you could do to stop this, Lisa?
A. No, sir.
Q. Did you think he was going to shoot himself?
A. Yes, sir.
*927 Q. You thought he meant it?
A. Yes, sir.
Q. He had never threatened Derek to you [sic] knowledge, had he, with a shooting?
A. No, sir."
Derek Fontenot also testified that he did not expect Bolfa to return to the Fusilier house later in the morning to shoot him. Thus, when Bolfa did return, it was Fontenot, not expecting any violent behavior, who told Lisa to go and speak with him.
The events surrounding the shooting happened rapidly, leaving little time for anyone to react. Lisa apparently did not notice that Bolfa had a shotgun until he walked through the front door.[1] Fearing that Bolfa might take his own life, she yelled out that he had a gun. Suddenly Bolfa fired at Fontenot. Clearly, under the circumstances, Lisa Fusilier was not physically capable of intervening to protect her guest. Thus, Lisa Fusilier did not breach any duty she owed to Derek Fontenot.[2]

SPECIAL VERDICT
Plaintiff also contends that the trial court committed reversible error by accepting, over plaintiff's objection, question No. 5 of defendant's proposed jury verdict form. This question indicated that the fault of Paul Bolfa, Lisa Fusilier, Wendel Fusilier, and Derek Fontenot could be assessed up to 100% each and that the combined fault of the four could not exceed 100%. We do not agree that the trial court committed reversible error in this instance. We note that before ever answering question No. 5. the jury had first to answer question Nos. 2 and 3 which asked whether Lisa and J. Wendel Fusilier had been negligent at all. The jury checked "no" to these questions.
The jury found that Bolfa was 100% responsible for the injury to Fontenot and also found that neither of the Fusiliers was at fault. When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, a reviewing court will not disturb the factual findings on appeal in absence of clear error. Pitre v. Kroger Co., 471 So.2d 1123 (La.App. 3d Cir.1985). In the instant case, this finding of the jury was not manifestly erroneous.

DAMAGES
We now turn to the question of damages. Plaintiff contends that the jury erred in not awarding him any damages. Pursuant to LSA-C.C.P. art. 2164, Courts of Appeal are empowered to award damages in cases where the trier of fact initially rejects the plaintiff's demands and the record contains sufficient proof of damages. Dupree v. Louisiana Transit Management, 441 So.2d 436 (La.App. 2d Cir.1983), writ denied, 445 So.2d 1233 (La. 1984). This determination must be made upon the peculiar facts and circumstances of each case. Alexander v. Leger, 423 So.2d 731 (La.App. 3d Cir.1982), writ denied, 430 So.2d 75 (La.1983).
The record shows that the plaintiff sustained a very serious and disfiguring injury to his left arm from the shotgun wound. The humerus was shattered and there was an extensive amount of muscular and soft tissue damage. Dr. Louis Blanda, plaintiff's treating physician, testified by deposition that had the humerus not absorbed the direct blast, the shot would probably have entered plaintiff's chest and killed him. The shotgun wound necessitated several surgeries including a bone graft from the pelvic region in April of 1987.
*928 Plaintiff also had a steel rod inserted in his arm to stabilize the fracture and allow the graft a better chance of healing. The rod remained in plaintiff's arm for ten months until February of 1988. Although plaintiff made a notable recovery, he has about twenty-five percent permanent damage to his arm. Also, plaintiff's arm is now more susceptible to further injury and infection, and prone to periodic swelling and pain.
Under the facts of this case we find that the amount of general damages due to the plaintiff is $75,000.00, and therefore, amend the trial court's award as such.
Furthermore, the record shows that the plaintiff's medical expenses were stipulated in the amount of $23,126.12 and that plaintiff incurred lost wages of $50,924.80 during the period of his disability.
For the reasons assigned, the judgment of the trial court finding Paul Bolfa solely liable for plaintiff's injuries is affirmed. The quantum judgment of the trial court is hereby amended and plaintiff is hereby awarded the sum of $75,000.00 for general damages and $74,050.92 for special damages, together with legal interest thereon from the date of judicial demand. In all other respects, the judgment of the trial court is affirmed. All costs of this appeal are to be paid by defendant, Paul Bolfa.
AMENDED AND AFFIRMED.
NOTES
[1] For the sake of completeness, we note that there is some uncertainty on this point. Several times at trial, Lisa Fusilier testified that it was only as Bolfa walked through the door that she noticed the shotgun. However, on one occasion at trial, she stated that she noticed Bolfa's shotgun when she opened the door. Nevertheless, we are convinced that the events in question happened so unexpectedly and rapidly that Lisa did not have time to act to prevent Bolfa from entering the house.
[2] In view of our holding that Lisa Fusilier was not negligent in this matter, we deem it unnecessary to address plaintiff's arguments attempting to establish that Lisa Fusilier is covered under the Independent and United policies of J. Wendel Fusilier.