WHIPPLE, Judge.
This is an appeal by plaintiff from the granting of a motion for summary judgment in favor of the defendants. Plaintiff, Herman Lee Scott, seeks damages arising from a gang-related shooting which occurred in close proximity to the home of defendant, Frederick Pack, during a party given by Pack’s stepson. For the following reasons, we affirm the trial court’s judgment granting the defendants’ motion for summary judgment.
FACTS
On February 8, 1985, at approximately 11:00 p.m., plaintiff suffered a gunshot wound to the head. The incident occurred in close proximity to the residence of Frederick Pack and his wife, Alice Marie Adler Pack, whose then-minor son, Alfred James Adler, was hosting the party.[1]
Although it is disputed whether Scott had specifically been invited to the party, it is undisputed that he was allowed to remain. Invitations to the party were dispatched by word of mouth, and many unwelcome, uninvited persons arrived, loitering in and around the Packs’ house during the party. Some of the unwelcome persons were believed to be members of the Zion City Smurfs (Smurfs), a gang from another neighborhood. Scott, who lives near the Packs, is not a member of the Smurfs.
Some of the guests at Adler’s party allegedly belong to the Banks, a gang from the local neighborhood who are rivals of the Smurfs. Adler stated he knew that the Smurfs and the Banks did not get along and that most of the guests stayed outside. *740 He further testified that an effort was made to keep uninvited persons out of his parents’ house. However, many individuals who were not allowed inside the house loitered in' and around the Packs’ and adjoining neighbors’ yards during the party.
Although the Packs deny that uninvited persons (the Smurfs) ever entered their home, testimony exists that several known members of the Smurfs went inside for eight to ten minutes. Other testimony indicates that the Smurfs were told they would be allowed to stay provided no trouble started and that only after an argument ensued were they asked to leave.
Much of what happened is unclear. Apparently, the Smurfs, at least initially, defied requests by the Packs that they leave the premises. As Mr. Pack testified, he could make them leave his yard, but not the immediately surrounding area. It is disputed whether the police were called at this point; however, Mr. Pack candidly testified that if he had called the police, he would have feared retribution.
Adler testified that both he and his parents asked the Smurfs to leave and that the Smurfs did not leave at first, but did so several minutes later, after an argument started outside. Minutes later, the shooting occurred when members of the Smurfs suddenly turned and opened fire from a distance of 50 or 60 yards away. Three persons suffered gunshot wounds, including Scott, who had been standing or kneeling behind bushes in the front yard of the Packs’ next-door neighbor, Richard Wright, who was also a guest at the party. Wright said Scott’s wound was so serious that he thought Scott was dead.
Frederick Pack testified that when the shooting occurred, he went to the front door to see what had happened. He then told his wife to call the police. Alice Pack testified that as soon as she finished calling the police, she was told by Mr. Pack to call an ambulance. Mrs. Pack acknowledged that she would have permitted uninvited guests to remain as long as they did not start any trouble, but she denied having knowledge that anyone expected trouble.
Derick Perkins, however, said he left the party because he expected that trouble might occur. He testified that a fight had nearly erupted earlier but that the Smurfs left without incident. According to Perkins, several members of the Smurfs stayed inside the Packs’ house for approximately ten minutes. He said the Smurfs argued with Mr. Pack when he asked them to leave and that the argument continued as they went outside. Perkins left the party at this time, but remained nearby and heard the shots being fired three or four minutes later. Perkins lives in the house immediately to the rear of the Pack home.
Richard Wright related that because the Smurfs wore trenchcoats, “everybody think they got [sic] guns”. His impression of the event was that the Smurfs left because they did not want to fight with the guests at the party, but that others expected trouble. Wright said Perkins and others were leaving, so he accompanied them. However, he was able to witness the shooting.
PROCEDURAL HISTORY
Scott filed a suit naming Frederick Pack and American Bankers Insurance Company as defendants. He alleged that either Gregory George, Frederick Keith Green, or Ronald Rene Georgetown shot him in the head. These individuals were believed to be the assailants. Scott next alleged that the shooting and his injuries resulted from the negligence of the named defendants and that his injuries proximately resulted from the intoxication of one or more of the defendants, entitling him to punitive damages.
Scott filed four supplemental and amending petitions. In the first two supplemental petitions, he added Lafayette Insurance Company and Blue Ridge Insurance Company, respectively, as defendants.[2] In response to a motion for partial summary judgment filed by the defendants, Scott filed a third supplemental and amending *741 petition deleting his claim for punitive damages. In his fourth supplemental and amending petition, Scott added as defendants, Alice Pack, individually and as natural tutrix of Alfred James Adler, and Alfred James Adler, individually.
He also amended his original general allegation of negligence to include additional specific non-exclusive acts of negligence. Plaintiffs allegation of negligence by the defendants, as amended, reads:
Plaintiff shows that the shooting and resulting injuries and damages resulting therefrom was a result of the breach of obligations owed by defendants to plaintiff which, in the case of Frederick Pack, Alice Pack, individually and as natural tutrix of her minor child, Alfred James Adler and Alfred James Adler individually, consists more particularly but not exclusively of the following:
A. Having a party when defendants knew or reasonably should have known that there was a good chance that trouble and violence would occur and/or in not taking adequate precautions to avoid and/or minimize said trouble and/or violence.
B. Failing to take reasonable steps to keep violent conduct from occurring.
C. Failing to reasonably supervise and conduct the party.
D. Serving or permitting to be served alcoholic beverages in the presence of minors and others who were not equipped to handle same.
E. Other acts of negligence which may be shown through discovery or at trial.
F. Generally, the failure of these defendants to act with the required degree of care commensurate with the existing situation.
The Department of Health and Human Resources, State of Louisiana, filed a petition in intervention against the defendants to recover the cost of medical treatment rendered to plaintiff at Charity Hospital in New Orleans (now the Medical Center of Louisiana). The defendants then filed a motion for summary judgment, seeking dismissal of both the main demand and the intervention.
By judgment dated June 11, 1990, the trial court granted the defendants’ motion for summary judgment, dismissing with prejudice both the main demand and the intervention. In its oral reasons for judgment, the court said it assumed that all parties involved were invited guests but found no breach of any duty owed by the homeowner. The court concluded there were no material facts in dispute regarding the defendants’ freedom from liability because the first sign of violence was when the shooting occurred.
Plaintiff timely perfected an appeal, urging the following assignments of error:
1. The Trial Court erred in granting summary judgment when the Packs and Adler knew or reasonably should have known there would be violence and did not act reasonably and promptly to avoid trouble by warning their guests and calling the police.
2. The Trial Court erred in granting summary judgment when there was a genuine issue of material fact as to whether alcoholic beverages were being served to minors and at a party where rival groups of youths with a history of “bad blood” between them were present at the party during the time the gang members were also present in the Pack house.
3. The Trial Court erred in granting summary judgment when there was a genuine issue of material fact as to whether plaintiff was invited to the Pack/Adler party.
Intervenor filed an Answer to Appeal on October 1, 1990. Upon motion of the defendants, intervenor’s answer was dismissed by this Court on January 18, 1991. Thus, the trial court’s judgment dismissing intervenor’s claim against the defendants is now final. At issue in this appeal is the extent of the duty owed by an owner or occupier of a home to prevent harm to social guests and whether the defendants could be found liable to plaintiff for harm inflicted by the assailants.
SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, *742 345 (La.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Penalber v. Blount, 550 So.2d 577 (La.1989). Summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge, or good faith. Penalber, 550 So.2d at 583.
Because the moving party has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion. Schroeder, 591 So.2d at 345. Facts are material if they potentially ensure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute. Penalber, 550 So.2d at 583.
Despite the presence of disputed facts, summary judgment as a matter of law will be granted if the disputed issues of fact are so patently insubstantial as to present no genuine issues. Aydell v. Charles Carter & Company, Inc., 388 So.2d 404, 406 (La.App. 1st Cir.), writ denied, 391 So.2d 460 (La.1980).
DUTY OF HOMEOWNERS TO SOCIAL GUESTS
Generally, the duty owed by an owner or occupier of a home to a social guest is to avoid reasonably foreseeable danger to the guest and to keep his premises safe from hidden dangers in the nature of traps or pitfalls. Fontenot v. Bolfa, 549 So.2d 924, 926 (La.App. 3rd Cir.1989). There is no general duty to protect others from the criminal acts of third persons; thus, the general duty of reasonable care imposed by law on a homeowner does not extend to unanticipated or unforeseeable criminal acts of a third person. Fontenot, 549 So.2d at 926.
DISCUSSION
In his first assignment of error, Scott contends the trial court erred in granting the motion for summary judgment because the defendants knew or reasonably should have known that violence would erupt but did not warn their guests or call the police in a timely fashion. He suggests that the defendants voluntarily undertook the duty to protect their guests by trying to eject the Smurfs after they had refused to leave. We reject Scott’s suggestion that the Packs voluntarily undertook the duty to protect guests loitering outside their home.
To prevail on a negligence claim, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant’s conduct failed to conform to the appropriate standard (the breach of duty element); (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiff’s injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiff’s injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). Fowler v. Roberts, 556 So.2d 1, 4 (La.1989).
The existence of a duty is a question of law. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371 (La.1984). In the present case, whether the defendants had a duty to warn their guests or to call the police turns on whether danger was reasonably foreseeable; that is, whether they knew or should have known that trouble would occur. In deciding whether the granting of summary judgment was proper, we are not bound by a manifest error standard of review but are empowered to decide the motion de novo. Schroeder, 591 So.2d at 345.
Viewing the facts and inferences therefrom in the light most favorable to Scott, and keeping in mind that summary judgment is rarely appropriate for determination of a subjective fact such as knowledge, we find that the defendants breached no legal duty owed to the plaintiff. Nor do we find that the defendants’ conduct in *743 failing to take the precautions suggested by plaintiff was a cause-in-fact of his injuries.
A defendant’s conduct is considered to be a cause-in-fact of harm to another if but for his conduct the harm would not have occurred, or if his conduct is a substantial factor in bringing about the harm. Nix v. Brasly, 489 So.2d 1088, 1041 (La.App. 1st Cir.1986). Cause-in-fact is usually a “but for” inquiry; however, the substantial factor test is useful when the conduct of more than one party operates to cause harm. Fowler, 556 So.2d at 5.
Again, for purposes of reviewing defendants’ motion for summary judgment, we view the facts in the light most favorable to Scott and conclude that the defendants’ alleged failure to warn their guests of the danger presented by the Smurfs or to call the police beforehand was not a substantial factor in bringing about the subsequent shooting of Scott. The failure to implement a given level of security protection is not a proximate cause of a particular act where the event might have occurred in spite of the utmost security precautions. Hall v. Board of Supervisors Southern University, 405 So.2d 1125 (La.App. 1st Cir.), writ denied, 407 So.2d 748 (La.1981).
Even assuming that the defendants' failure to act was a cause-in-fact of plaintiff’s injuries, such inaction would not constitute legal cause. Our Supreme Court recently discussed legal cause (the scope of protection element) in great detail in Roberts v. Benoit, 603 So.2d 150 (La.1992), on rehearing. Roberts reaffirmed the substantial relationship or ease of association test for legal cause; that is, whether the purpose of the duty is substantially related to the risk of harm, or whether the risk of harm is easily associated with the duty breached.
Applying that test to the present case, we conclude that the homeowner’s duty, if any, to warn guests of the possibility of danger or to call the police prior to the occurrence of any confrontation, did not encompass the risk that an adult guest wandering outside would become the victim of a gang-related shooting, under the facts presented herein.
In the present case, the defendants were engaged in the laudable activity of hosting a party for neighborhood youths. Uninvited guests (the Smurfs) showed up but were allowed to stay, with the understanding that they would no longer be welcome if they caused any trouble. When an argument between the Smurfs and other guests erupted, the Smurfs were asked to leave; and they left. They initially resisted and argued with Mr. Pack, but there was no indication that any threats were made. There is no testimony that any of the numerous individuals present ever saw a gun.
Although plaintiff suggests that the Packs knew the Smurfs had been involved in previous shootings, the depositions show that the shooting of plaintiff was not reasonably foreseeable, especially where no one had personal knowledge that the Smurfs actually possessed firearms while at the party. In fact, Wright stated that he saw one of the Smurfs fire a rifle, suggesting that the Smurfs did not bring the weapon or weapons used in the shooting to the party but retrieved them after leaving the party. Moreover, the guests were aware of what had transpired and had as equal knowledge of the circumstances and events unfolding as did the defendants.
To impose liability on the defendants for harm done in such a manner, unexpectedly and outside of the confines of their home, is undesirable from the standpoint of justice considering the social utility of their conduct. Additionally, Scott increased the risk of harm to himself by going outside to an area of potential trouble, rather than remaining in the Pack home. The defendants’ actions in hosting the party decreased the risk of harm to their guests by providing them with a safe haven to dance and listen to music.
Moreover, we do not find that any duty owed by the defendants to warn their guests or to call the police was substantially related to, or easily associated with, the risk that Scott would become the victim of a gang-type shooting occurring outside of the confines of their home. Therefore, any factual dispute surrounding defendants’ in-actions are rendered immaterial.
*744 Consequently, Scott's first assignment of error lacks merit.
Scott contends in his second and third assignments of error that there are genuine issues of material fact as to whether alcoholic beverages were served at the party, where rival gang members with a history of “bad blood” were present, and whether Scott was an invited guest.
Although whether alcohol was served or allowed to be served at the party is a disputed fact, breach of the duty not to serve alcohol to minors was neither a cause-in-fact nor a legal cause of plaintiffs injury under the facts of this case. The duty to prohibit the consumption of alcohol by minors was not substantially related to, or easily associated with, the risk that the Smurfs would later commit an intentional, criminal act, especially in the situation herein where little, if any, control could be exercised over those minors.
For the purpose of deciding the merits of defendants’ motion for summary judgment, both the trial court and this Court assume that all of the parties involved had been invited to the party. Thus, the factual issues cited by Scott in his second and third assignments of error as being in dispute are patently insubstantial and raise no genuine issues of fact material to a resolution of whether summary judgment was appropriate in this case. Aydell, 388 So.2d at 406.
Scott’s second and third assignments of error also lack merit.
DECREE
For the foregoing reasons, we affirm the trial court’s judgment granting the motion for summary judgment in favor of defendants, Frederick Pack, Alice Marie Adler Pack, Alfred James Adler, and Blue Ridge Insurance Company, and dismissing with prejudice the demand filed by the plaintiff, Herman Lee Scott. Costs are assessed against the plaintiff.
AFFIRMED.

. The facts are taken from the depositions of Frederick and Alice Pack, Alfred Adler, Derick D. Perkins, and from a recorded statement given by Richard E. Wright. The parties stipulated to the admissibility of Wright’s statement for purposes of the hearing on the motion for summary judgment.

. Of the three alleged insurers, only Blue Ridge Insurance Company is a party to this appeal. Plaintiff voluntarily dismissed American Bankers Insurance Company. Lafayette Insurance Company has made no appearance, by answer, exception, or otherwise.