550 So.2d 577 (1989)
Sherry PENALBER
v.
Kirby BLOUNT and Livingston Parish Police Jury.
No. 89-C-1071.
Supreme Court of Louisiana.
October 23, 1989.
John C. Miller, Joseph A. Schittone, Jr., Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, for applicant.
James E. Kuhn, Asst. Dist. Atty., Denham Springs, Patrick W. Pendley, Plaquemine for respondents.
COLE, Justice.
In this wrongful seizure action, the trial court granted summary judgment in favor of the Livingston Parish Police Jury and against an attorney personally for the wrongful garnishment of oil and gas revenues *578 belonging to the police jury. The garnishment was effected to satisfy a judgment against the police jury rendered in favor of the attorney's client. However, it violated LSA-Const. Art. 12, § 10(C) and LSA-R.S. 13:5109(B)(2).[1] We granted a writ to consider whether a negligence or an intentional tort action can lie in favor of a non-client against an attorney for such a wrongful seizure and if so whether, on the showing made, summary judgment was proper.
There is a clear distinction between malpractice claims based on negligence and claims based on intentional tort. We conclude an attorney can be held accountable to a non-client for intentional tortious conduct such as the knowing violation of a prohibitory statute, but no cause of action lies in favor of a non-client under theories of malpractice and negligence because the attorney owes no duty to the adversary of his client.[2] The police jury, therefore, can maintain an action in intentional tort against the attorney under the allegations that he knowingly and intentionally seized police jury property in violation of express prohibitory law. However, the pleadings, affidavits and exhibits of record herein do not resolve all genuine issues of material fact relating to the attorney's intentional violation of the provisions prohibiting seizure of public assets and, therefore, we vacate the summary judgment and remand for further proceedings.

FACTUAL AND PROCEDURAL HISTORY
Attendant to an automobile accident which occurred on a Livingston Parish road, Sherry Penalber Lewis (Penalber) obtained a judgment in 1980 against the Livingston Parish Police Jury (police jury) for the amount of $14,500.00, plus interest from date of judicial demand. After attempts at voluntary collection of the judgment proved unsuccessful, Penalber's attorney, Michael R. Connelly (Connelly), undertook coercive collection methods in order to execute the judgment. He instituted a judgment debtor examination which was set for hearing on July 15, 1982, but the police jury responded by motioning for a protective order, claiming "the assets of a police jury are not capable of being seized" and the police jury can "not properly be subject of [sic] a judgment debtor rule." As a result, the judgment debtor examination was averted. Prior to signing the protective order, however, the trial court modified the language of the police jury's proposed order in the manner shown below:
IT IS ORDERED BY THE COURT, That the judgment debtor rule set for July 15, 1982 be cancelled only as to the assets of a police jury that are not capable of being seized.
Shortly after the protective order was issued, Connelly filed a petition for garnishment with annexed interrogatories, citing Amoco Oil Company as garnishee. An abeyance occurred thereafter until 1984 when Connelly filed additional garnishment pleadings, citing Amoco Production Company as garnishee; allegedly, without giving notice to the police jury. From answers to garnishment interrogatories, Connelly discovered *579 Amoco Production Company held police jury assets consisting of mineral lease royalties. He submitted a judgment and obtained an order on October 16, 1984, requiring Amoco to deliver $30,545.13 to the Sheriff of Livingston Parish. Of that sum, $29,593.37 was disbursed to Connelly and $951.76 was retained by the court for its costs. Connelly then remitted $15,636.69 to Penalber and kept the remainder as his fees and costs.
The police jury, on November 16, 1984, filed a petition against Penalber, Connelly and Amoco Production Company, claiming solidary liability for wrongful seizure of public funds in contravention of LSA-R.S. 13:5109 and LSA-Const. Art. 12, § 10. The petition asserts defendants "knew full well of the constitutional prohibitions against seizure of public assets for satisfaction of a Judgment." It charges that with full knowledge of these prohibitions, the defendants participated in seeking and obtaining public funds immune from seizure; both Connelly and Penalber benefited from the illegal seizure; and the procedural requirements for issuance of a writ of fieri facias and for notice and service were not followed. The petition also claimed, "[h]ad the defendants or any of them notified the petitioner of the actions being taken in this proceeding either by service or notice to counsel of record, then appropriate action could have been taken through the Courts to prohibit the illegal procedure, thereby negating the damages caused by the wrongful seizure." The police jury prayed for judgment in its favor for the amount seized, $29,593.37 plus $951.76, and for additional damages in the amount of $20,000.
Connelly answered the police jury's petition incorporating the peremptory exception raising the objections of no right of action and no cause of action. He asserted he owed no duty to the police jury. He subsequently motioned for summary judgment. Amoco and the police jury also motioned for summary judgment. Amoco eventually was dismissed as a party defendant on September 11, 1986.
In support of its motion for summary judgment, the police jury declared Connelly's judgment debtor examination was averted by the issuance of the protective order, premised on statutory and constitutional provisions which prohibit seizure of public assets for execution of judgment; that, nevertheless, subsequent to the issuance of the protective order, Connelly filed five petitions for garnishment with garnishment interrogatories from which he learned of Amoco's obligation to the police jury. The police jury claims Connelly then suggested to Amoco and to the court that a writ of fieri facias had been issued and served on Amoco when no writ had properly been obtained; that thereafter Connelly submitted to the court a judgment, which it signed, ordering Amoco to deliver certain funds to the sheriff; that Connelly eventually received the funds and deposited them into his client fund, disbursing a portion to Penalber.
The affidavits supporting the police jury's motion reveal that Linda M. Cockerham, an employee of the Clerk of Court, Parish of Livingston, found the record of this case did not contain a "Request for Notice or Return of Service of Notice by Michael R. Connelly or Sherry Penalber to the Livingston Parish Police Jury of the issuance of a writ of fieria [sic] facias nor of any seizure." Further the pleadings did not "contain a certificate by the attorney that a copy of the pleadings had been mailed to all counsel of record." James S. Sibley, President of the Livingston Parish Police Jury, stated in his affidavit, "[n]either affiant nor any other representative of Livingston Parish Police Jury has either been served with or received notice of any garnishment attempts by Sherry Penalber through her agent and attorney, Michael R. Connelly." The police jury's exhibits did not contain a memorandum supporting the motion for a protective order or the transcript of the hearing on the motion.[3]
*580 On March 26, 1986, the trial court rendered judgment on the several motions pending, finding the garnishment null because under LSA-Const. Art. 12, § 10(C) and LSA-R.S. 13:5109 public funds cannot be seized to satisfy a judgment and because the police jury never received notice that its property was being seized in contravention of LSA-C.C.P. Art. 2293. Connelly and Penalber were ordered to return the $30,545.13 wrongfully seized and to pay legal interest, but were not ordered to pay damages for lost use of the revenues or attorney's fees.
The judgment was signed April 14, 1986 and, on its heels, Penalber filed a motion seeking its nullity. She asserted she had "not [been] legally cited to appear, [had] never [been] served with any pleadings and [had] made no appearances" in the proceedings. Penalber's motion further declared she had no knowledge of the wrongful seizure proceedings until April, 1986 when she returned to Livingston Parish to collect her check from the Livingston Parish train derailment settlement fund and, while there, the Assistant District Attorney advised her about these proceedings.
Thereafter, Penalber, with benefit of new counsel of record, answered the police jury's wrongful seizure petition urging affirmative defenses of extinguishment of the obligation and set off. She also filed a third party demand against Connelly for reimbursement for any sums Penalber might be condemned to pay, costs and attorney's fees. Connelly responded by asserting a third party reconventional demand for indemnity or contribution from Penalber in the amount of $15,636.69, the amount which she acknowledged receiving.
On September 11, 1986, the trial court cancelled its April 14, 1986 judgment. The motions for summary judgment filed by the police jury, Penalber and Connelly were then heard on October 20, 1986. Oral reasons were assigned on that date and judgment was signed on April 27, 1987, decreeing Penalber and Connelly solidarily liable for the full sum of $29,262.63, with legal interest from date of judicial demand. Penalber's motion was granted only to the extent that Connelly was ordered to pay her $13,625.94, with legal interest from the date her petition was filed until paid. Her affirmative defenses were denied. Connelly's peremptory exception and his motion were denied and both he and Penalber were cast for all court costs.
Penalber and Connelly both entered timely appeals, but Penalber's appeal was dismissed due to her failure to file a brief. Uniform Rules, Court of Appeal, Rule 2-12.7. Judgment against her is now final.
In Connelly's appellate brief, he conceded the wrongfulness of his seizure of police jury assets, but continued asserting his objection of no cause of action and, alternatively, the error of adjudging him solidarily liable. He did not appeal the judgment on Penalber's third party demand.
The Court of Appeal affirmed the trial court's judgment, 542 So.2d 108 (La.App. 1st Cir.1989).[4] The panel majority found Maise v. Demarest, 483 So.2d 1193 (La. App. 4th Cir.1985), writ den., 488 So.2d 690 (La.1986), more analogous to the situation under suit than C & V Gravel, Inc. v. Maco Constr. Corp., 465 So.2d 938 (La.App. 2d Cir.1985). Accordingly, it held that although an attorney may not generally owe a duty to an adverse litigant, where he affirmatively violates the Louisiana Constitution and statutory law by seizing property belonging to a public body, a cause of action can be stated and an attorney can be *581 personally cast in judgment. One panel member dissented asserting no cause of action can be maintained against the attorney because an attorney owes no duty to his client's adversary and finding a duty would cause a chilling effect on adversarial counsel. The appellate court also concluded Connelly and Penalber's obligation is solidary because, under agency principles, Connelly was acting on his client's behalf and she ratified the wrongful seizure by retaining the portion of the funds disbursed to her, citing LSA-C.C. arts. 1843 and 3010.
We granted certiorari, 545 So.2d 1044 (La.1989), to consider Connelly's primary contention that, as an attorney, his client's adversary cannot maintain a cause of action against him for the actions he ostensibly undertook in his client's behalf.

CAUSE OF ACTION
Connelly argues, even if he violated a statutory or constitutional duty owed to the public or the court, no negligence or malpractice cause of action against him personally arose on behalf of the adverse litigant. To support his contention, he cites C & V Gravel, Inc. v. Maco Constr. Corp., supra; McReynolds v. Kruse, 440 So.2d 791 (La. App. 1st Cir.1983), writ den., 444 So.2d 1241 (La.1984); Lowe v. Continental Ins. Co., 437 So.2d 925 (La.App. 2d Cir.1983), writ den., 442 So.2d 460 (La.1983), cert. den., 466 U.S. 942, 104 S.Ct. 1924, 80 L.Ed.2d 470 (1984); and Spencer v. Burglass, 337 So.2d 596 (La.App. 4th Cir.1976), writ den., 340 So.2d 990 (La.1977).
Through the peremptory exception raising the objection of no cause of action, the legal sufficiency of a petition is tested. For purposes of ruling on the objection, no evidence may be introduced to support or controvert the exception; the court must accept all factual allegations of the petition as true; and sustain the objection only if no remedy is afforded under the allegations asserted. LSA-C.C.P. art. 931; Robinson v. North American Royalties, Inc., 470 So.2d 112 (La.1985); Stock v. City-Parish of East Baton Rouge, 525 So.2d 675, 676 (La.App. 1st Cir.1988). Our review of the law reveals Connelly correctly asserts, that under the facts, no cause of action exists against him under theories of malpractice or negligence. His argument is not dispositive, however, since an objection of no cause of action must be overruled if the petition states a cause of action on any ground or portion of the demand. Stock v. City-Parish of East Baton Rouge, supra; Harris v. Steele, 506 So.2d 542, 543 (La.App. 1st Cir.1987), writ den., 511 So.2d 1155 (1987). We find the police jury's petition patently states a cause of action in intentional tort.
Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf. See C & V Gravel, Inc. v. Maco Constr. Corp., supra; Spencer v. Burglass, supra; McReynolds v. Kruse, supra; Lowe v. Continental Ins. Co., supra; Olympia Roofing Co., Inc. v. City of New Orleans, 288 So.2d 670 (La.App. 4th Cir.1974), writ den., 292 So.2d 244 (La.1974), 61 A.L.R.4th 443 (1988); cf. Deville v. Zaunbrecher, 401 So.2d 643 (La.App. 3d Cir.1981), reh. den. A non-client, therefore, generally cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation. The intent of this rule is not to reduce an attorney's responsibility for his or her work, but rather to prevent a chilling effect on the adversarial practice of law and to prevent a division of the loyalty owed a client. See C & V Gravel, Inc. v. Maco Constr. Corp., supra.
An attorney's duty is to zealously represent his client. To accomplish this obligation, adversarial counsel must not be hampered by fear of personal liability for negligently injurying his client's opponent. The attorney's paramount duty is to his client. As such, not even the Rules of Professional Conduct create actionable duties for negligent injury of a client's adversary or negligent breach of professional obligations which might run in favor of his client's adversary. See Spencer v. Burglass, supra.
*582 Thus, if the police jury had alleged facts establishing only a negligent wrongful seizure of police jury assets, i.e., seizure without knowledge of the statutory and constitutional provisions proscribing his actions or only negligence in the procedural accomplishment of the seizure, Connelly's objection of no cause of action would be sustained. The police jury's petition, however, asserts Connelly's conduct was intentionally tortious and sets forth allegations of intentional culpable acts on the part of Connelly. It alleges that after Connelly filed the judgment debtor rule on June 25, 1982, the police jury obtained a protective order concerning the rule. Consequently, "the defendants herein knew full well of the constitutional prohibitions against seizure of public assets for satisfaction of a Judgment. With full knowledge of these prohibitions, the defendants participated in seeking and obtaining ... funds ... immune from seizure." The petition also alleges defendants Connelly and Penalber were beneficiaries of the illegal seizure and defendants knew or should have known of the legal impediments to the execution of any judgment against the police jury as LSA-Const. Art. 12, § 10 and LSA-R.S. 13:5109 specifically prohibit the seizure of public funds for the purpose of satisfaction of a judgment. The petition concludes with allegations that since no notice was given to the police jury of the request for the issuance of the writ or the execution of the writ, no valid writ of fieri facias was issued; and, as a result, the police jury was unable to negate its damages by preventing the seizure through court ordered intervention.
Based upon these allegations of fact, which for purposes of ruling on the objection are accepted as true, the police jury correctly advocates that Connelly's peremptory exception cannot be sustained. The petition asserts Connelly knew he was violating prohibitory laws when he seized public assets. The petition disclaims notions of Connelly's good faith noncompliance of the prohibitory provisions. Instead, it alleges intentional, even calculated, misconduct performed for both Connelly and his client's benefit, causing direct harm to the adverse litigant. Intentionally tortious actions, ostensibly performed for a client's benefit, will not shroud an attorney with immunity. Consequently, even though an attorney does not generally owe a duty to his client's adversary, under the broad ambit of LSA-C.C. art. 2315, an attorney may be held personally accountable for his intentional tortious conduct such as knowingly seizing public assets in direct violation of LSA-R.S. 13:5109 and LSA-Const. Art. 12, § 10. Accord, Lucas v. Ludwig, 313 So.2d 12 (La.App. 4th Cir. 1975), writ den., 318 So.2d 42 (La.1975) [landlord prevailed on an invasion of privacy action against her former tenant and his attorney for their tortious attempt to coerce her into releasing former tenant's property]; Shaw v. Everett, unpublished, CA-8615 (La.App. 4th Cir.1988), writ den., 531 So.2d 275 (La.1988) [denied defendant attorney's objection of no cause of action based, in part, on allegations that attorney intentionally breached Rules 1.2(c); 1.15(b); and 3.3(a)(2) ]. See also Olympia Roofing Co., Inc. v. City of New Orleans, supra.
The basic difference between an intentional tort and a negligent act is briefly explained in Bazley v. Tortorich, 397 So.2d 475 (La.1981). A more recent treatment of the subject matter is found in Caudle v. Betts, 512 So.2d 389 (La.1987). Numerous authorities and commentaries are cited and the opinion notes:
The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Restatement (Second) of Torts, American Law Institute § 13, (comment e) (1965). Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids. The defendant may be liable although... honestly believing that the act would not injure the plaintiff.... W. Prosser and W. Keeton, The Law of Torts, § 9 (5th ed. 1984).
512 So.2d at 391.
We conclude the allegations made by the police jury, taken as true, constitutes conduct which states a cause of action within the ambit of intentional tort law.

*583 PROPRIETY OF SUMMARY JUDGMENT
Finding the petition for wrongful seizure states a cause of action against Connelly does not end our inquiry. We must now examine the motion for summary judgment together with its pleadings, affidavits and exhibits to ascertain whether the trial court properly determined the police jury is entitled to judgment as a matter of law.
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and the mover is entitled to summary judgment as a matter of law. LSA-C.C.P. art. 966; Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). Summary procedure should be used cautiously and sparingly; any reasonable doubt should be resolved against mover in favor of full trial on the merits. Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Co., 427 So.2d 1152 (La.1983); Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980). Moreover, it is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith. Johnson v. Hitchens, 518 So.2d 1154 (La.App. 4th Cir. 1987), reh den.
The burden of proof is on the mover to establish there are no genuine issues of material fact. A "fact" is material if its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Facts are "material" if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. The burden is exacting. American Bank & Trust Co. v. Vinson, 528 So.2d 693 (La.App. 2d Cir.1988).
To prevail on its motion, then, it is essential for the police jury to establish Connelly's violation of LSA-R.S. 13:5109 and LSA-Const. Art. 12, § 10 was intentional, knowing and in bad faith. The protective order, however, cancelled the judgment debtor rule "only as to the assets of a police jury that are not capable of being seized" and the motion for the order made only general assertions that "the assets of the police jury are not capable of being seized." No supporting memorandum cited the specific constitutional and statutory provisions to establish Connelly's knowledge of the provisions or of his intent to disregard them. Consequently, the police jury had the burden of showing by other means that on the issue there exists no genuine question of fact.
Nevertheless, exhibits such as the transcript of the hearing on the motion for a protective order were not introduced. Nor were affidavits, depositions, answers to interrogatories or admissions introduced to establish Connelly's intent or knowledge. As a result, the police jury failed to meet its exacting burden and is not entitled to summary judgment as a matter of law.
Accordingly, we sustain the lower courts' denial of Connelly's peremptory exception raising the objection of no cause of action. However, the summary judgment in favor of the police jury is vacated and the case is remanded for further proceedings.[5] Assessment of costs is reserved pending final judgment on the merits.
AFFIRMED IN PART; VACATED IN PART; AND, REMANDED.
LEMMON, J., concurs.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I am of the opinion that no cause of action can be maintained against Connelly because an attorney owes no duty to his client's adversary when acting in his client's behalf. Finding such a duty would have a chilling effect on the adversarial practice of law and cause a division of *584 loyalty owed to a client. Accordingly, I respectfully dissent.
NOTES
[1] LSA-Const. Art. 12, § 10(C) provides: The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered.

LSA-R.S. 13:5109(B)(2) provides: Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.
[2] This opinion does not address situations where the non-client is not an adversary, but a third-party beneficiary. See Capital Bank & Trust Co. v. Core, 343 So.2d 284 (La.App. 1st Cir.1977), writ den., 345 So.2d 61 and 345 So.2d 504 (La.1977); Succession of Killingsworth v. Schlater, 270 So.2d 196 (La.App. 1st Cir.1972), writ granted, 273 So.2d 292 (1973), rev'd in part, aff'd in part, 292 So.2d 536 (La.1973).
[3] The police jury argued Connelly was liable under LSA-C.C. art. 2315. It sought to distinguish the case of C & V Gravel, Inc. v. Maco Constr. Corp., 465 So.2d 938 (La.App. 2d Cir. 1985), which held an attorney violated no duty owed to the non-client after he wrongfully seized the non-client's backhoe and would not release it after the non-client produced documentation showing the backhoe did not belong to the judgment debtor. It contrasted the present case noting while the C & V seizure was a judgment call, Connelly's wrongful seizure was committed in violation of specific prohibitory statutes of which he had been informed during his aborted judgment debtor rule. The police jury argued the duties Connelly breached are the duty every person owes not to violate prohibitory laws and not to cause injury to public assets. It further asserts the duties created by the canons of ethics and disciplinary rules for the benefit of both the public and bar.
[4] In addition to affirming the trial court judgment, the Fourth Circuit also ordered the Clerk of Court to reinstate Penalber's judgment against the Livingston Parish Police Jury once the Clerk had received evidence the judgment in favor of the police jury had been satisfied.
[5] Our decision pretermits resolution of Connelly's claim that he is not solidarily liable with Penalber.