619 So.2d 1099 (1993)
Nevenka O.K. CHARIA, Appellant,
v.
John I. HULSE, IV, Appellee.
No. 92-CA-2646.
Court of Appeal of Louisiana, Fourth Circuit.
May 13, 1993.
*1100 James E. Uschold, New Orleans, for appellant.
W. Paul Andersson, Leake & Andersson, New Orleans, for appellee.
Before CIACCIO, LOBRANO and LANDRIEU, JJ.
LOBRANO, Judge.
Plaintiff, Nevenka O.K. Charia, appeals the dismissal of her suit against John I. Hulse, IV on an exception of no cause of action.

FACTS:
Charia's petition filed July 28, 1992, and the affidavit annexed thereto sets forth the following assumed facts.[1]
In July of 1991, Hulse was hired by plaintiff's former husband, Steven J. Charia to prepare Mr. Charia's last will and testament naming plaintiff as a legatee. Mr. Charia was terminally ill at the time and bedridden in the hospital.
During meetings between plaintiff, Mr. Charia, Hulse and plaintiff's attorney, Jane C. Scheuermann, Mr. Charia stated his intention to leave his entire estate to plaintiff. After consultation with Hulse, Mr. Charia decided to leave eighty percent (80%) of his estate to plaintiff and their daughter, Tania Charia Messina.
On July 25, 1991, Jane Scheuermann drafted a last will and testament pursuant to Mr. Charia's wishes bequeathing seventy-five (75%) of his estate to plaintiff and twenty-five (25%) to Tania Charia Messina.
Hulse advised Mr. Charia not to sign the will.
Subsequently, on July 29, 1991, Scheuermann prepared a second last will and testament at the direction of Hulse leaving one-third (1/3) each to plaintiff, Tania Messina and plaintiff's and Mr. Charia's son, Igor Carija Charia. Again, Hulse advised Mr. Charia not to sign the second will.
On July 31, 1991, Steven Charia died intestate.
The facts of plaintiff's petition assert legal negligence on Hulse's part for "failing... to obtain Mr. Charia's signature on his Last Will and Testament...." The petition also asserts that Hulse breached his contract with Steve Charia by "refusing to allow Mr. Charia to sign...." Plaintiff claims to be a third party beneficiary of that contract. Finally plaintiff asserts Hulse's refusal to allow Mr. Charia to sign was an intentional tort.
On September 15, 1992, Hulse filed a peremptory exception of no cause of action asserting that no attorney/client relationship existed between himself and plaintiff; that he acted only as counsel to Steven Charia; and that Louisiana law recognizes no duty by an attorney to a non-client for the attorney's conduct on his client's behalf unless that conduct is an intentional tort.
Hulse's exception was maintained. No written reasons were assigned. This appeal followed.
The exception of no cause of action must be decided on the face of the petition and no evidence may be introduced to support or controvert that exception. C.C.Pro. Art. 931. All well pleaded allegations of the petition and any annexed documents must be assumed as true, and any doubt should be resolved in favor of the petition. Kuebler v. Martin, 578 So.2d 113 (La. 1991); Darville v. Texaco, 447 So.2d 473 (La.1984); Barnett v. Develle, 289 So.2d 129 (La.1974).[2]
The exception tests the legal sufficiency of the petition. It questions whether the law affords any remedy to plaintiff under the allegations of her petition. Kuebler, supra; Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975); Holmes v. Great Atlantic & Pacific Tea Co., 587 *1101 So.2d 750 (La.App. 4th Cir.1991), writ den. 592 So.2d 412 (La.1992).
The exception must be overruled if the petition states a cause of action on any ground or portion of the demand. Pitre v. Opelousas General Hospital, 530 So.2d 1151 (La.1988).
In brief, plaintiff cites Succession of Killingsworth v. Schlater, 292 So.2d 536 (La.1973) and Penalber v. Blount, 550 So.2d 577 (La.1989) in support of her contention that she has stated a cause of action against Hulse both in negligence and in intentional tort. Hulse asserts that Penalber, not Killingsworth, applies because as a non-client, plaintiff has no cause of action against him in negligence. Hulse does concede, however, that pursuant to Penalber, plaintiff could have a cause of action in instances of intentional tort.
After reviewing plaintiff's petition and the annexed affidavit of her attorney, Jane Scheuermann,[3] we affirm and remand.

SUCCESSION OF KILLINGSWORTH:
In Killingsworth, our Supreme Court in its original opinion held that a notary/attorney was liable to legatees who were denied their intended legacies as a result of the notary/attorney's negligence in confecting the testatrix's will.[4] The Court's holding was predicated on both negligence and breach of contract. The court reasoned that decedent's intended legatees were third party beneficiaries and thus could pursue a claim against the notary for his failure to perform the contract he had with decedent to confect a valid will. In reality, the Court's holding does not establish a negligence claim independent of the breach of contract claim. The asserted "negligence" was really the notary's failure to perfect a valid will. Absent the contract between the Notary and the decedent there was no independent breach of duty owed to the intended legatees. The holding, however, does establish the right of an intended legatee to bring the claim as a third-party beneficiary of the contract between the Notary (promisor) and the decedent (stipulator).
In Penalber v. Blount, supra, the Supreme Court expressly rejected the theory that an attorney owes any duty to an adversarial non-client and therefore could not be responsible in negligence. In a footnote, the Court noted that its opinion did not address the situation where the non-client was a third party beneficiary, citing Killingsworth. The court did hold, however, that the attorney could be responsible to the non-client for intentional tort.
For purposes of deciding the instant case, we assume that Killingsworth gives plaintiff the right to assert a claim as a third party beneficiary.[5] The real issue, however, is whether the allegations assert a claim that the contract between Hulse and the decedent was breached, negligently or intentionally.
*1102 Paragraph eight states that "Hulse is liable to plaintiff for legal negligence in failing, despite ample opportunity before his death, to obtain Mr. Charia's signature...." Paragraph nine states that "Defendant has also breached his contract with Mr. Charia ... by refusing to allow Mr. Charia to sign ... before he died."
Initially we conclude that the petition as written does not sufficiently state a cause of action for intentional tort. In Bazely v. Tortorich, 397 So.2d 475 (La.1981), and subsequently in Cardle v. Betts, 512 So.2d 389 (La.1987), the Supreme Court differentiated between the unintentional and intentional tort. Quite simply, an intentional tort requires "an intent to bring about a result which will invade the interests of another in a way the law forbids." Id. at 391. In the instant case the mere assertion that Hulse refused to allow the decedent to sign does not sufficiently set out an intent by him to adversely affect plaintiff's interest. Further, nothing in the affidavit annexed to plaintiff's petition indicates, alleges, or suggests that Hulse had any wrongful intent to harm the plaintiff.
With respect to the negligence allegation, we reach the same conclusion. The only factual allegation to substantiate the claim of negligence is that Hulse failed to get decedent's signature before he died. Assuming that fact as true, plaintiff cannot recover on that conclusion alone. The allegation "Hulse is liable ... for legal negligence" is a legal conclusion. The allegation is insufficient to state a cause of aciton. And accepting Scheuermann's affidavit as true, it does not support a claim for negligence. To the contrary, it suggests that any delay on Hulse's part was the result of his attempt to properly advise his client.
We therefore conclude that if the petition and accompanying affidavit are accepted as true, there is no cause of action stated, either in negligence or intentional tort. Pursuant to Code of Civil Procedure Article 934 the plaintiff is permitted to amend her pleadings to state a cause of action, if she can. Because the trial court did not permit plaintiff to do so, this court grants her ten days from the date this judgment is final to amend. Accordingly, this matter is remanded to the trial court and plaintiff is afforded ten days from the date of this judgment to amend her pleadings to state a cause of action if she can.
AFFIRMED AND REMANDED.
NOTES
[1] For purposes of deciding an exception of no cause of action, we assume the truth of plaintiff's allegations.
[2] See ftn. 3, infra.
[3] Code of Civil Procedure Article 931 provides that no evidence may be introduced to controvert or support the exception of no cause of action. Somehow or another this rule of law was expanded to include any documents annexed to the petition. The often quoted law cited above apparently had its origin in Everhardt v. Sighinolfi, 232 La. 996, 95 So.2d 632 (1957) where the court considered the petition and an annexed contract to sell real estate. A subsequent case, Elliott v. Dupuy, 242 La. 173, 135 So.2d 54 (1961) used the same language, i.e. "annexed documents", when considering contracts of sale annexed to the petition. The jurisprudence has consistently used the "annexed documents" language when deciding the no cause of action exception. However, this court is not entirely certain "annexed documents" was intended to include what is tantamount to the testimony of a witness. However, to give the plaintiff's claim every benefit of the doubt we have accepted Scheuermann's affidavit as an "annexed document" and consider it to be true.
[4] The nuncupative will by public act was held invalid because it had been typed by the notary/attorney's secretary and, as such, did not constitute "written" by the notary as required by Article 1578 of the Civil Code. On rehearing the court declared the will valid finding that the negative testimony of the subscribing witnesses to the effect that the will was not typed by the notary was not supported by sufficient independent facts or reasonable inferences to overcome the presumption of the validity of the will.
[5] There is valid argument that Killingsworth should be limited to the situation where a testator has actually expressed his intention in a will to name a legatee even though the will may be invalid.