656 So.2d 1103 (1995)
ADVANCED ORTHOPEDICS, L.L.C.
v.
John E. MOON.
No. 95-CA-76.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 1995.
Thomas B. Calvert, Robein, Urann & Lurye, Metairie, for defendant/appellant.
Raymond P. Ladouceur, Ladouceur and Ladouceur, New Orleans, for plaintiff/appellee.
Before KLIEBERT, DUFRESNE and GOTHARD, JJ.
*1104 GOTHARD, Judge.
This is an appeal of a trial court decision which granted summary judgments in favor of plaintiff and third party defendant. For the following reasons, we affirm.

FACTS
On November 20, 1992, Byron Heath ("Heath") and John E. Moon ("Moon") established a prosthetic and orthotic services business in the Parish of Jefferson, State of Louisiana, called Advanced Orthopedics, L.L.C. ("Advanced"). Pursuant to LSA-R.S. 12:1301, et seq., Heath filed Advanced's Articles of Organization and an Initial Report with the Louisiana Secretary of State's Office. On November 25, 1992, the secretary of state issued a certificate of organization, recognizing Advanced as a Limited Liability Company ("L.L.C.") and authorizing Advanced to transact business as an L.L.C.
Thereafter, Advanced, under the management of Heath and Moon, began providing prosthetic and orthotic services to the community. By June of 1993, Moon and Heath were having difficulties in managing Advanced together. Negotiations for a potential buy-out were held, but to no avail. By November of 1993, Moon had opened his own prosthetic and orthotic services business, Moon Orthopedics. After setting up his new business, and upon the advice of his own counsel, Moon resigned from Advanced.
On November 29, 1993, Advanced filed a "petition for permanent injunction and damages" against Moon, alleging that Moon violated his fiduciary duties to Advanced during the time that he was setting up his competing business, and requesting an injunction to prevent Moon from soliciting Advanced's patients and compelling him to return certain "patient records, posting registers, library references, supplier catalogues, and all equipment not originally contributed by him to the L.L.C. as his capital contribution."
On December 13, 1993, the trial court granted a preliminary injunction in favor of Advanced, enjoining Moon from soliciting any patients of Advanced or using any of Advanced's records without prior written consent. Moon thereafter answered Advanced's petition and filed a third party demand against Heath, alleging Heath "fraudulently enticed" Moon to become a manager of Advanced and that Heath violated his fiduciary duty to Advanced by his "non-participation" which resulted "in the constructive expulsion of John E. Moon as a manager member of Advanced Orthopedics, L.L.C."[1] Moon also filed a reconventional demand against Advanced for refusing "to account to John E. Moon for his membership interest prior to or following his withdrawal from Advanced Orthopedics, L.L.C..."
On July 11, 1994, Advanced and Heath filed motions for summary judgment on Moon's reconventional demand and third party demand against them. On September 2, 1994, Moon amended his original answer to the suit, alleging that Advanced "was not a legally formed limited liability company," or, alternatively, when Moon did not sign a proposed operating agreement, "he effectively withdrew from the L.L.C. resulting in mandatory dissolution by operation of law pursuant to Louisiana Revised Statute 12:1334(3)."
On September 7, 1994, a hearing on the motions for summary judgment was held. On September 13, 1994, the trial court granted both motions for summary judgment and dismissed Moon's reconventional demand and third party demand with prejudice.
Moon thereafter brought this appeal, alleging that: 1) "The district court erred in holding that there existed no genuine issue of material fact in dispute relative to the subjective intent of the parties to form a limited liability company;" and 2) "In the alternative, the district court erred as a matter of law in determining that there were no genuine issues of material fact in dispute as to John Moon's right to a capital contribution distribution."

SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration *1105 of whether summary judgment is appropriate. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342, 345 (La.1991). Pursuant to La.Code Civ.Proc. art. 966(B), a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Once a motion for summary judgment has been made and supported, a party opposing the motion may not rest on the mere allegations of his pleadings, but must set forth by way of affidavit or other receivable evidence specific facts showing a genuine issue for trial, or else summary judgment will be rendered against him. La.Code Civ.Proc. art. 967; Gardner v. Kostmayer & Associates, Inc., 638 So.2d 434 (La.App. 5 Cir.1994), writ denied, 644 So.2d 646 (La.1994).
The party moving for summary judgment has the burden of showing the absence of a genuine issue as to any material fact. A fact is material if its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. In other words, material facts are those which potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Penalber v. Blount, 550 So.2d 577 (La.1989); South Louisiana Bank v. Williams, 591 So.2d 375 (La.App. 3 Cir.1991), writ denied, 596 So.2d 211 (La.1992).
Where the trial court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits and depositions, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Burke v. Occidental Life Insurance Company of California, 427 So.2d 1165 (La.1983); Mashburn v. Collin, 355 So.2d 879 (La.1977). The court must first determine whether the supporting documents presented by mover are sufficient to resolve all material fact issues. If they are not sufficient, summary judgment must be denied. If they are sufficient, the burden shifts to the opposing party to present evidence that material facts are still at issue, and, at this point, he may no longer rest on the allegations and denials contained in his pleadings. Durrosseau v. Century 21 Flavin Realty, Inc., 594 So.2d 1036 (La.App. 3 Cir. 1992).

ANALYSIS
The record before us contains exhibits which were attached to Advanced's and Heath's motions for summary judgment in the trial court. Pertinent documents included are the deposition of Moon, Advanced's Articles of Incorporation and Initial Report, and the certificate of organization issued by the secretary of state.
In Moon's first assignment of error, he argues that he did not have the subjective intent to form an L.L.C. with Heath, and that therefore, a material fact is still in dispute. We disagree. During the year that Moon participated in the management of Advanced, he never questioned its viability as an L.L.C. He testified in his deposition that he reviewed informational materials regarding L.L.C.s prior to Advanced's inception and that he knew that he and Heath were operating their business as an L.L.C. Furthermore, LSA-R.S. 12:1304B provides in pertinent part that "[t]he certificate of organization shall be conclusive evidence of the fact that the limited liability company has been duly organized ..." Advanced clearly provided enough evidence to the trial court to support its argument that an L.L.C. was formed and operating. The burden then shifted to Moon to present evidence that material facts were still at issue, and he could no longer rest on the allegations and denials contained in his pleadings. Durrosseau, supra.
On appeal, Moon argues that he did not adequately understand the concept of an L.L.C. and that because he did not sign a proposed operating agreement, he rejected the formation of an L.L.C. These arguments fail to place material issues of fact in dispute. Attaining a certain level of understanding regarding L.L.C.s is not a prerequisite to the formation of and participation in one. Further, we are aware of no requirement in the *1106 law that an L.L.C. have an operating agreement to be viable. After a thorough review of the record, we cannot find any support for Moon's assertion that somehow he did not have the subjective intent to form an L.L.C. with Heath.
Moon's second assignment of error, that the trial court erred by finding that he is not entitled to any reimbursement for a capital contribution from Advanced, likewise lacks merit. Moon testified in his deposition that he agreed with Heath that each of them would contribute $10,000.00 to start up their business. However, since Moon did not have the money, Heath agreed to contribute the full $20,000.00 and be reimbursed for Moon's $10,000.00 in the future. Moon argues on appeal that the trial court erred by finding that Moon was not entitled to any reimbursement for a capital contribution because he did not make a contribution in cash. He asserts that pursuant to LSA-R.S. 12:1321, a capital contribution does not have to be in the form of cash, and that he made capital contributions to Advanced via his past experience, good will, services rendered and equipment he contributed, "which assisted this business in its infancy."
While it is true that capital contributions do not have to be in the form of cash, Moon has offered no proof to support his assertion that he made non-cash capital contributions to Advanced. There is no evidence in the record that Heath and Moon agreed that Moon would make a non-cash capital contribution, nor is there any evidence that Moon did so on his own volition. The only evidence in the record regarding capital contributions is Moon's deposition testimony that he put up nothing. Standing alone, Moon's assertion that he made non-cash capital contributions is insufficient to overcome his burden of proof for the purposes of a summary judgment. La.Code Civ.Proc. art. 967.
Lastly, in Advanced's brief, counsel for Advanced requests that, pursuant to U.R.C.A. rule 2-12.4, counsel for Moon be punished and sanctioned for contempt of court for making "[i]nsulting, abusive, discourteous, and irrelevant matter or criticism of opposing counsel ..." The portion of Moon's brief which counsel for Advanced finds offensive is a three sentence statement where counsel for Moon calls into question counsel for Advanced's propriety in purportedly representing both Advanced and Moon at the same time.[2] While superfluous and not relevant to the issues before us today, we do not find that counsel for Moon's comments rise to the level required for punishment for contempt of court under rule 2-12.4.
For the foregoing reasons, the trial court's September 13, 1994 judgment, granting summary judgment in favor of Advanced Orthopedics, L.L.C., dismissing the reconventional demand of John E. Moon with prejudice; and granting summary judgment in favor of Byron Heath, dismissing the reconventional demand of John E. Moon with prejudice, is hereby affirmed.
AFFIRMED.
NOTES
[1] It defies logic to believe that one party's non-participation in a business would result in the constructive expulsion of another party.
[2] In reference to an October of 1993 letter sent by counsel for Advanced to Moon regarding his involvement in both Advanced and his newly formed competing company, Moon Orthopedics, Moon's brief states: "Ironically, the legal advise [sic] given to Moon was given to him by Raymond P. Ladouceur, attorney for Byron Heath, as well as attorney for Advanced Orthopedics. In light of this fact, one must question the propriety of Mr. Ladouceur's involvement as counsel for opposing parties in this particular case. It is apparent that Mr. Ladouceur should have disqualified himself from the representation in this particular case."