MCCLENDON, J.
A corporation seeks review of a judgment following a trial on the merits that dismissed its claims against an attorney. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
Covington Golf and Recreation Park, Inc. was incorporated in 2004 by Charles Gambino, Thomas E. Ketchum, Jr., and Betty Keating, for the purpose of opening a golf driving range. The only directors for the corporation were Mr. Gambino and Mr. Ketchum. Mr. Gambino served as the corporation's president, while Mr. Ketchum served as its secretary/treasurer and was the sole registered agent for service of process. Mr. Ketchum's home address was designated as Covington Golf's registered office and principal place of business.
Covington Golf leased property owned by Mr. Ketchum and his wife, Betty Keating, under a ten (10) year commercial property lease. The lease, which contained an option to purchase, listed Mr. Ketchum's home address as the mailing address of the corporation.
At all pertinent times, attorney Geoffrey H. Longenecker represented Mr. Ketchum and Ms. Keating. On April 2, 2008, Mr. Longenecker sent Covington Golf a letter notifying the corporation that it had violated the terms, conditions, and obligations of the commercial lease by failing to pay rent for three months. The letter, signed by Mr. Longenecker, stated that he represented Mr. Keating and Ms. Ketchum and notified Covington Golf that the corporation had ten (10) days to cure the deficiencies listed or its lease would be terminated. The notice of deficiency was addressed to *17 Covington Golf and delivered, via certified mail and hand delivery, to Mr. Ketchum's home address. Mr. Ketchum signed the certified mail receipt.[1]
Mr. Ketchum and Ms. Keating subsequently filed suit against Covington Golf based on its violation of the commercial lease. On June 25, 2008, Mr. Ketchum, as registered agent for service of process of Covington Golf, was personally served with a copy of the petition entitled "Betty Keating, wife of/and Thomas E. Ketchum, Jr. v. Covington Golf & Recreation Park, Inc." No answer was filed to this petition.
The trial court subsequently entered a default judgment against Covington Golf. The notice of judgment was served on Covington Golf, again through Mr. Ketchum, on August 15, 2008.[2]
On October 8, 2008, a notice to vacate, which demanded that the property be vacated within five (5) days, was posted on the leased premises of Covington Golf. In response, Mr. Gambino on behalf of Covington Golf sought a preliminary and permanent injunction and a judgment declaring that the lease was valid and enforceable and that it was not required to vacate the premises.
Covington Golf subsequently filed a first supplemental and amending petition, adding Mr. Longenecker as a defendant, and alleging that Mr. Keating, Ms. Ketchum, and Mr. Longenecker had engaged in a conspiracy to commit fraud in filing suit against Covington Golf and obtaining a default judgment cancelling the commercial lease. Covington Golf alleged that at no time did Mr. Ketchum, as agent of Covington Golf, ever advise any other officer or director that suit had been filed. Covington Golf alleged that the acts of Mr. Ketchum, Ms. Keating, and Mr. Longenecker in having the demand letter mailed solely to Mr. Ketchum and obtaining a default judgment by serving the suit solely on Mr. Ketchum, without forwarding copies to any other officers or directors, constituted fraud. Moreover, Covington Golf alleged that the acts of Mr. Ketchum and Ms. Keating constituted a breach of contract and a breach of a fiduciary duty. Covington Golf alleged that the defendants' acts caused it damage, including the loss of its lease and option to purchase.
Mr. Ketchum and Mrs. Keating later declared bankruptcy, and they were thereafter dismissed without prejudice from the suit. Mr. Longenecker subsequently died on January 13, 2009, and his estate was substituted in his place as a party defendant.[3]
On September 7, 2016, this matter went to trial solely against Mr. Longenecker's estate. At trial, Covington Golf maintained that Mr. Longenecker conspired with and assisted Mr. Ketchum in intentionally breaching his fiduciary duty and defrauding Covington Golf. Specifically, Covington Golf averred that Mr. Gambino, through the acts of the defendants, was completely *18 "left in the dark" concerning the financial situation at Covington Golf.
At trial, Mr. Gambino testified that Covington Golf operated successfully for several years. During this time, Mr. Ketchum handled all financial matters for the corporation, including paying bills, insurance and taxes, while Mr. Gambino operated the driving range, pro shop, and taught golf lessons. According to Mr. Gambino, Mr. Ketchum would come by the office on a daily basis to pick up the cash and the receipts, while credit cards were automatically sent to Mr. Ketchum's designated bank account. Under this arrangement, Mr. Ketchum paid all the bills, including the rent that was due to him under the lease agreement.
Moreover, Covington Golf notes that on May 2, 2007, Mr. Gambino noticed a special meeting of the officers and board of directors to be held on May 18, 2007 at the law office of Ward and Condrey. In that notice, Mr. Gambino specifically indicated that he wanted to discuss the status of corporate tax filings and review the corporation's books and records-particularly the incoming expense statements. He also wanted to discuss plans for the development of the properties to which the corporation had a lease and option to purchase. Mr. Ketchum did not attend the meeting. Mr. Gambino called another special meeting of the officers and board on April 23, 2008 to discuss similar issues at the law office of Ward and Condrey. Again, Mr. Ketchum did not attend that meeting.
Covington Golf alleged that Mr. Gambino saw Mr. Ketchum on a regular basis between 2005 and 2007, and Mr. Gambino testified that there was never a discussion about any problems with Covington Golf owing rent to Mr. Ketchum. Covington Golf noted that from April through June 2008, Mr. Gambino testified that Mr. Ketchum never made any mention to Mr. Gambino that Covington Golf was behind on rent or any other obligation, though Mr. Ketchum appeared at the clubhouse daily to pick up cash receipts.
Mr. Gambino testified that he was unaware of issues related to the financial conditions at Covington Golf until October 8, 2008, when he discovered a "Notice to Vacate" taped to the clubhouse door. Mr. Gambino indicated that a few days prior to receiving the notice, Mr. Longenecker had appeared at Covington Golf instructing Mr. Gambino that "he should leave the property" and an argument ensued. Mr. Gambino testified that the heated discussion had more to do with Mr. Longenecker's handling of a personal injury case for Mr. Gambino's wife and stepson. According to Mr. Gambino, at no point did Mr. Longenecker advise him that he represented Mr. Ketchum in a dispute over rent, that he had filed a lawsuit against Covington Golf, that he secured a judgment against Covington Golf, and that the appellate delays were about to run in a matter of days.[4] Rather, Mr. Gambino noted that all pleadings were served by Mr. Longenecker to his client, Mr. Ketchum, until he received the October 8, 2008 notice to vacate, which was specifically addressed to Mr. Gambino.
Following the trial, the trial court took the case under advisement. The trial court subsequently issued reasons for judgment, wherein it concluded that plaintiff failed to meet its burden of proof to show that Mr. Longenecker "had information that Mr. Ketchum and/or Ms. Keating intended to accomplish all notices in this litigation in such a fashion that Mr. Gambino never had actual notice of the lawsuit and the *19 ultimate eviction." The trial court subsequently signed a judgment dismissing Covington Golf's case with prejudice on September 29, 2016.[5]
In its appeal, Covington Golf raises the following lone assignment of error:
The Trial Court committed error by requiring plaintiff to establish proof of actual knowledge on the part of Longenecker that his client, Keating, had not forwarded a required notice of deficiency, or notice of suit, or notice of default to Gambino. The law establishes that Longenecker's knowledge and liability may be proved by circumstantial evidence.
DISCUSSION
On appeal, Covington Golf avers that there is no question that Mr. Ketchum owed a fiduciary duty to the corporation and its shareholders, including a duty to deliver the notice of default and service of process to Covington Golf. Covington Golf asserts that Mr. Ketchum intentionally failed to do so, obtaining a judgment against Covington Golf through fraud.
Moreover, Covington Golf asserts that Mr. Longenecker was also liable for his own tortious conduct for his participation in this scheme. See LSA-C.C art. 2324.[6] While Covington Golf recognizes that our courts have adopted the traditional majority view that an attorney does not owe a legal duty to his client's adversary when acting on his client's behalf, that rule does not apply if the attorney engages in intentional tortious conduct such as the knowing violation of a prohibitory statute. See Penalber v. Blount, 550 So.2d 577, 578 (La. 1989).
In Penalber, the supreme court recognized that "[a] non-client, therefore, generally cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation. The intent of this rule is not to reduce an attorney's responsibility for his or her work, but rather to prevent a chilling effect on the adversarial practice of law and to prevent a division of the loyalty owed a client." Id., 550 So.2d at 581. "An attorney's duty is to zealously represent his client. To accomplish this obligation, adversarial counsel must not be hampered by fear of personal liability for negligently injuring his client's opponent. The attorney's paramount duty is to his client. As such, not even the Rules of Professional Conduct create actionable duties for negligent injury of a client's adversary or negligent breach of professional obligations which might run in favor of his client's adversary." Id. Nevertheless, "[i]ntentionally tortious actions, ostensibly performed for a client's benefit, will not shroud an attorney with immunity. Consequently, even though an attorney does not generally owe a duty to his client's adversary, under the broad ambit of LSA-C.C. art. 2315, an attorney may be held personally accountable for his intentional tortious conduct." Id. at 582.
*20 Covington Golf avers that its evidence established that Mr. Longenecker facilitated Mr. Ketchum's breach of fiduciary duty and fraud. Covington Golf asserts that Mr. Longenecker knew that Mr. Ketchum owed a fudiciary duty to the company and that Mr. Ketchum was obligated to provide the company with the notice of default and service of process. Covington Golf contends that all the circumstances indicate that Mr. Longenecker was the architect of the fraudulent scheme to obtain a judgment without Mr. Gambino's knowledge. In this regard, Covington Golf alleges that Mr. Longenecker personally appeared at Covington Golfs office and confronted Mr. Gambino, seeking to have Covington Golf voluntarily vacate the premises without informing Mr. Gambino of any of the filings made in furtherance of the default judgment.
Covington Golf also argues that the trial court erred in placing the burden on it to prove actual knowledge on the part of Mr. Longenecker that his client, Mr. Ketchum, intended to keep information concerning notice, the lawsuit, the default judgment, and cancellation of the lease from Mr. Gambino. Covington Golf asserts that no such proof was required. Rather, Covington Golf notes that while evidence of a conspiracy can be shown by actual knowledge of both parties or overt actions with another, it can also "be inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator." Boudreaux v. Jeff, 03-1932 (La.App. 1 Cir. 9/17/04), 884 So.2d 665, 672. Covington Golf asserts that it is clear that Mr. Longenecker carefully calculated each step in the process and that his "silence or inaction" until the day after the appeal delay had expired is indicative of his involvement in the conspiracy. Covington Golf asserts that this court should review the evidence de novo because the trial court employed an erroneous burden of proof.
However, in its written reasons for judgment the trial court never required Covington Golf to show that Mr. Longenecker had "actual knowledge" of Mr. Ketchum's intentions. Rather, the trial court, in finding that Covington Golf failed to meet its burden by a preponderance of the evidence, indicated that Covington Golfs two chief witnesses admitted that they had no evidence that Mr. Longenecker "had information that Mr. Ketchum and/or Ms. Keating intended to accomplish all notices in the litigation in such a fashion that Mr. Gambino never had actual notice of the lawsuit and the ultimate eviction." Moreover, the trial court indicated that "[w]hile a circumstantial case could be made that Mr. Longenecker could have or might have had certain information, [Covington Golf] failed in [its] burden of establishing by a preponderance of the evidence that such information existed." This indicates that the trial court did consider circumstantial evidence, but the trial court concluded that such evidence was not sufficient to meet plaintiff's burden of proof. Since there is no evidence that the trial court's fact finding was interdicted by error, de novo review is not warranted. Therefore, we must review this case under the manifest error standard.
Under the manifest error standard of review, a reviewing court may not merely decide if it would have found the facts of the case differently. Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC, 14-2592, (La. 12/8/15), 193 So.3d 1110, 1115. Rather, to reverse a trial court's factual conclusion, the appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong.
*21 Stobart v. State through Dep't of Transportation and Dev., 617 So.2d 880, 882 (La. 1993). Reasonable evaluations of credibility and inferences of fact should not be disturbed, even if the appellate court feels that its own evaluations and inferences are as reasonable. Hayes, 193 So.3d at 1116.
The trial court found that Covington Golf failed to meet its burden of proof by a preponderance of the evidence. Following our review of the record and in light of our standard of review, we affirm the trial court's factual findings. See Guillory v. Lee, 09-0075 (La. 6/26/09), 16 So.3d 1104, 1117 ("[O]n review, an appellate court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently.") While the circumstances might arouse suspicion as to Mr. Longenecker's participation in a conspiracy, we are unable to conclude that the trial court lacked a reasonable basis for its decision. Accordingly, Covington Golf's assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we are constrained to affirm the trial court's judgment dismissing Covington Golf's suit against Mr. Longenecker's estate. Costs of this appeal are assessed to appellant, Covington Golf and Recreation Park, Inc.
APPEAL MAINTAINED; JUDGMENT AFFIRMED.
Welch J. dissents and assigns reasons.
Theriot J. dissents and concurs with J. Welch reasons.
WELCH, J., dissents.
I respectfully disagree with the majority's decision in this case. The trial court manifestly erred in finding that Covington Golf failed to meet its burden of proof because the record before us is replete with evidence demonstrating Mr. Longenecker's active and knowing involvement in a fraudulent conspiracy, which was aimed at ensuring that Covington Golf's lease was cancelled and hence, Covington Golf was prevented from exercising the option in its favor to purchase the property subject to the lease. Therefore, I would reverse the judgment of the trial court and render judgment in favor of Covington Golf.
There is no dispute that Mr. Longenecker was aware that his client, Mr. Ketchum, was the agent for service of process and the corporate secretary for Covington Golf, the defendant in the lease action. Thus, Mr. Longenecker had knowledge that the petition he filed on behalf of Mr. Ketchum to terminate Covington Golf's lease would in fact be served upon Mr. Ketchum. In addition, the confirmation of default judgment presents an additional absurdity which could not have escaped Mr. Longenecker's attention. There, Mr. Longenecker and Mr. Ketchum appeared in court to confirm a default judgment in favor of Mr. Ketchum individually, wherein Mr. Ketchem was the agent for the defendant against whom the default judgment was being taken for failure to file a timely response. Mr. Longenecker would have been aware that the failure of Mr. Ketchum, in his role as the secretary of and agent for service of process for Covington Golf, to act or ensure that the necessary exceptions and/or answer were filed on behalf of Covington Golf, would result in a default judgment. Mr. Longenecker, thus, had a conflict of interest and placed himself in an unusual and inappropriate ethical circumstance. As such, Covington Golf met its burden of proving Mr. Longenecker's participation in a conspiracy to commit fraud and the trial court manifestly erred in concluding otherwise.
Thus, I respectfully dissent.

There is no evidence in the record of any notices being sent to Mr. Gambino.

Louisiana Code of Civil Procedure article 2004 states:
A. A final judgment obtained by fraud or ill practices may be annulled.
B. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.
C. The court may award reasonable attorney fees incurred by the prevailing party in an action to annul a judgment on these grounds.
In this case, there is no indication that appellant filed a petition to annul the default judgment rendered against Covington Golf based on fraud or ill practice.

Mr. Ketchum also died in 2009. It does not appear that either Mr. Ketchum or Mr. Longenecker were deposed prior to their deaths.

Covington Golf asserts that the appellate delays expired on October 7, 2008, or one day prior to the eviction notice first being brought to Mr. Gambino's attention.

After Covington Golf sought to appeal, this court issued a rule to show cause why the appeal should not be dismissed because the judgment lacked appropriate decretal language indicating in whose favor and against whom the judgment was rendered. The trial court subsequently rendered a new judgment on March 14, 2017, which contained the appropriate decretal language. Accordingly, we maintain Covington Golf's appeal.

Louisiana Civil Code article 2324A provides:
He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.