477 So.2d 1235 (1985)
Druis BOUDREAUX
v.
TERREBONNE PARISH POLICE JURY.
No. 85 CA 0269.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
Rehearing Denied November 8, 1985.
Grady C. Weeks, Houma, for plaintiff and appellee Druis Boudreaux.
Jerry L. Hermann, Houma, for defendant and appellant Terrebonne Parish Police Jury.
Jerry H. Schwab, Houma, for defendant and appellee Nolan A. Picou.
Before CARTER, SAVOIE and ALFORD, JJ.
*1236 SAVOIE, Judge.
Defendant, Terrebonne Parish Police Jury, appeals the trial court's judgment in favor of plaintiff, Druis Boudreaux, and dismissal of defendant's third party demand against Nolan Picou.
On March 29, 1983, Boudreaux, was involved in a two-car collision on Parish Road Sixteen, commonly known as Hollywood Road, located in Terrebonne Parish, Louisiana. Nolan Picou, driver of the other vehicle, was proceeding west on Hollywood Road when he inadvertently left the road's paved portion onto the shell shoulder. The Picou vehicle travelled the shoulder approximately 132 feet before it struck a rut causing Picou to lose control of the vehicle. The vehicle then veered left, crossed both lanes of travel and entered onto the opposite shoulder before re-entering the road and striking Boudreaux's vehicle headon. At the time of impact, Picou's vehicle was estimated to have been traveling 25-30 mph, while Boudreaux's vehicle was at a complete stop. As a result of this accident, Boudreaux alleges to have sustained injuries to his back rendering him totally disabled.
Boudreaux filed suit against the Terrebonne Parish Police Jury as owner and custodian of Hollywood Road, alleging liability under both negligence and strict liability. Thereafter, the Police Jury filed a third party demand against Nolan Picou and his insurer, State Farm Insurance Company, seeking indemnity and/or contribution.
The trial court, finding the road defective based upon the rut and the shoulder's loose gravel, held the Police Jury strictly liable. Judgment was rendered in favor of Boudreaux and against the Police Jury in the amount of $499,757.76, together with legal interest. This award included $135,000.00 in general damages; $25,000.00 for an additional 10% disability sustained by Boudreaux; $328,060.99 in lost wages; $1,326.80 in property damages for repair to his automobile; and $10,370.87 for medical bills. Further, the court dismissed the Police Jury's third-party demand against Nolan Picou.
From this judgment the Police Jury alleges the following specifications of error:
"1. The trial court erred as a matter of fact and law in finding a causal connection between the accident in this case and the injuries allegedly suffered by Druis Boudreaux.
"2. The trial court erred as a matter of law and fact in awarding excessive damages in the amount of $135,000.00 for physical and mental pain and suffering and $25,000.00 for disability.
"3. The trial court erred as a matter of fact and law in awarding any amount for lost wages in this matter.
"4. The trial court erred as a matter of fact and law in awarding $10,307.87 as medical expenses and in finding a causal connection between the accident in this case and the medical bills incurred by plaintiff.
"5. The trial court erred as a matter of law and fact in holding that the accident in this case caused the plaintiff to be permanently and totally disabled from engaging in any gainful employment.
"6. The trial court erred as a matter of fact in holding that the plaintiff's first lumbar fusion was "broken" as a result of the accident when all of the competent medical evidence, including that of the plaintiff's treating physician, showed beyond a doubt that the first fusion was unsuccessful from the day it was performed.
"7. The trial court erred as a matter of law and fact in allowing property damages of $1,326.80 when the plaintiff had not prayed for such damages and when the defendant objected to the introduction of any damage estimates to enlarge the pleadings.
"8. The trial court erred as a matter of law in dismissing the third party demand of the Terrebonne Parish Police Jury against Nolan Picou, the driver of the vehicle which ran off the road and collided into the plaintiff's vehicle.

*1237 "9. The trial court erred as a matter of law in finding that Hollywood Road was defective for the purposes of imposing strict liability upon the Terrebonne Parish Police Jury as a result of the accident in this case."
Due to this court's disposition of the causation issue (Specification of Error Nos. 1, 5, and 6), discussion of Specification of Error Nos. 2, 3, 4, 8, and 9 is hereby pretermitted.

Specifications of Error Nos 1, 5, and 6
The Police Jury asserts that the trial court erred in finding a causal connection between the accident herein and the injuries allegedly sustained by Boudreaux. Specifically, it asserts that Boudreaux failed to prove this accident, (1) caused the injuries he now complains of, (2) permanently and totally disabled him from engaging in any gainful employment, and (3) "broke" his first lumbar fusion.
It is well settled in Louisiana that causation is a question of fact to be determined by the trier thereof. Moreover, the trier of fact's determination is entitled to great weight and cannot be disturbed absent manifest error. McSweeny v. Department of Transporatations and Development of Louisiana, 442 So.2d 659 (La.App. 1st Cir.1983). It is equally well settled that the burden of proving both the existence of injuries and the causal connection between them and the accident, rests with the plaintiff. Such proof must be shown to a legal certainty and by a reasonable preponderance of the evidence, a mere possibility is insufficient. Stevens v. Gulf American Fire & Casualty Co., 317 So.2d 199 (La. App. 1st Cir.1975).
In order to fully understand and appreciate the injuries Boudreaux claims to have suffered as a result of the accident, a review of his prior medical history is necessary.
Boudreaux's back problems appeared in 1976 while he was working for Texaco as a carpenter. While on the job, Boudreaux had an accident which resulted in the surgical removal of two disks from his lower back by Dr. Irving K. Cahen. Boudreaux returned to work within five months following the surgery, but sustained a lower back strain in July of 1979, as a result of another work related accident. In May of 1981, Boudreaux was involved in a third work related accident which necessitated a lower back fusion performed by Dr. Leo Watermier.
After the fusion operation in 1981, Boudreaux never returned to his employment at Texaco and was listed as being permanently and totally disabled. Between the May, 1981, surgery and the accident herein, there is conflicting testimony as to the condition of Boudreaux's back and the pain he experienced. We note that at the time of the accident Boudreaux was receiving Social Security benefits and Retirement benefits on the basis of total permanent disability.
According to Boudreaux's testimony, although he did not return to work for Texaco following the 1981 fusion surgery, he was still able to work and perform regular tasks around the house. Boudreaux testified that he was able to paint the house, lay cement, build a shed, cut the grass, all without pain. He claimed to experience only occasional pain after a hard day's work; that pain being more in his hip than in his back. Moreover, Boudreaux testified that in January and February of 1983, he was in full health and had begun to do carpentry work for Mr. Carol Matherne. This work consisted of building stalls and apartments on Matherne's property. Boudreaux claims to have worked 10-12 hours per day and lifted 100-140 pound boards up a ladder to the second story of the building. Boudreaux's employment was confirmed by Matherne, Florence Bonvillian, a private nurse employed by Matherne, and Mrs. Boudreaux. These witnesses testified that Boudreaux worked for Matherne up until the day of the accident, never once complaining of back pain.
As a result of the accident, Boudreaux testified that he sustained a back injury which rendered him unable to work. The severe pain he experienced necessitated a *1238 second fusion operation which Boudreaux claims has failed to alleviate his pain.
In contrast to Boudreaux's testimony, medical testimony was given by several doctors who treated Boudreaux from 1981 until the date of trial. During this time Boudreaux was seen by Dr. Claude Williams from October 15, 1981, until July 29, 1982; Dr. Ira Woodstein from November 24, 1982, until January 31, 1983; and Dr. Richard Landry who Boudreaux has seen since the accident, and who performed Boudreaux's second fusion operation. The testimony of these doctors indicates that Boudreaux experienced pain in his lower back during this entire period. Moreover, Boudreaux's medical history reflects that he was taking Valium since 1977, as well as other pain relievers such as Percodan and Viacin, and as many as 125 Anacin per week.
Dr. Claude Williams, an orthopedic surgeon, testifed that he first saw Boudreaux on October 15, 1981, for an examination of Boudreaux's lower back pain. Boudreaux informed Dr. Williams of his prior work accidents, as well as the surgery performed by Dr. Cahen in 1976, and the fusion by Dr. Watermier in May of 1981. Dr. Williams testified that Boudreaux informed him he had fired Dr. Watermier four to five months following surgery because his condition was not improving.
Dr. Williams saw Boudreaux on at least seven occasions between October 15, 1981 and July 29, 1982. He testified that Boudreaux complained of constant pain since the May 1981 fusion. As a result of the x-rays and tests performed on Boudreaux, Dr. Williams determined that the original fusion was slow in taking, that the graft was more prevalent on the right side than on the left, and that an additional fusion might be necessary. He tentatively diagnosed Boudreaux's problem as pseudoarthrosis. Dr. Williams attempted to treat this problem conservatively before resorting to surgery. He testified that Boudreaux was advised to increase his activity level by walking and doing abdominal exercises. A decrease in use of pain medication was also attempted. Boudreaux continued to experience pain and on March 10, 1982, Dr. Williams suspected that the May 1981 fusion had failed.
Dr. Williams stated that on June 18, 1982, he sent a report to Texaco informing them that Boudreaux was permanently impaired from working as a carpenter, and that additional surgery may be necessary. On July 29, 1982, Dr. Williams testified that Boudreaux was informed of the necessity to undergo additional surgery to check for the pseudorathrosis and extend the fusion to include the sacrum. Boudreaux never returned to see Dr. Williams following that visit.
On November 27, 1982, plaintiff went to see Dr. Ira Woodstein, Chief of Orthopedic Surgery at South Louisiana Medical Center. Dr. Woodstein testified that he initially saw Boudreaux at the request of a hospital administrator who informed him that Boudreaux was complaining of headaches and numbness of the face. When examined, Boudreaux also complained of back pain. A second visit was scheduled as a result thereof. Boudreaux returned in December of 1982 and related his prior medical history, stating that he had been in pain since the 1981 accident and that the fusion performed by Dr. Watermier had failed to relieve his pain. Dr. Woodstein stated that Boudreaux also informed him that he had been taking pain medication since the 1977 surgery and was presently taking up to 125 Anacin per week.
Dr. Woodstein testified that during the visits, Boudreaux complained that his back hurt from walking, lying down, intercourse, casting a rod and reel, and even from carrying a comb in his hip pocket. Boudreaux claims however that during this time he was able to work and perform his normal activities relatively pain free. When questioned about Boudreaux's alleged work performance, Dr. Woodstein stated that such facts would be inconsistent with his medical condition. Dr. Woodstein further testified that on January 31, 1985, Boudreaux advised him that he had *1239 considered suicide because of the pain he was suffering.
Based upon these facts, Dr. Woodstein testified that Boudreaux was referred to a pain clinic. Boudreaux failed to keep that appointment, as well as three other appointments made by Dr. Woodstein. According to Dr. Woodstein, Boudreaux had a "narrow-fusion," whereby the fusion only covered a small percentage of the bony structure that it was meant to cover. In Dr. Woodstein's opinion the fusion was incomplete and should have been extended down to the sacrum. This opinion is consistent with the one previously expressed by Dr. Williams.
On January 31, 1983, Dr. Woodstein diagnosd Boudreaux as having chronic lumbrosacral strain, and limited motion due to the prior surgery. He recommended that Boudreaux wear a support brace and requested that Boudreaux return on March 2, 1983. Boudreaux failed to do so.
Dr. Woodstein's testimony reflects that Boudreaux was still experiencing pain in his lower back only two months before the accident. His testimony along with that of Dr. Williams leads to the conclusion that Boudreaux's problems stemmed from the failure of the 1981 fusion.
The only evidence offered by Boudreaux to show causations is the testimony of Dr. Richard Landry, his current treating physician. Dr. Landry testified that the fusion he performed was the direct result of the accident. This opinion, however, was rendered without the benefit of knowing Boudreaux's full medical history. Dr. Landry testified that Boudreaux had not informed him of the pain Boudreaux experienced since the first fusion. Nor was Dr. Landry told that Dr. Williams had recommended the same surgery some eight months before the accident, or that Boudreaux had ever seen Dr. Woodstein. When informed of these facts, Dr. Landry stated that it would change his findings and change his conclusion as to causation.
When informed of Boudreaux's alleged physical labor prior to the accident, Dr. Landry stated that he doubted Boudreaux did the work claimed. He further testified that if Boudreaux had actually performed the work that it could have caused Boudreaux injuries.
Boudreaux testified that Dr. Landry told him the fusion was broken in his back. The trial court apparently, but erroneously, put much emphasis on this statement since it found that the accident broke the fusion. However, nowhere in the record does Dr. Landry make any mention of the fusion being broken. Rather, Dr. Landry stated that the first fusion was not united. This testimony corresponds with that of Dr. Williams who stated that the prior fusion was not well defined and that there was a possibility of pseudoarthrosis. Dr. Woodstein also opined that the fusion was incomplete. Further, the operation performed by Dr. Landry following the accident was the same procedure recommended by Dr. Williams some eight months prior to the accident. The inescapable conclusion is that Boudreaux's condition prior to the accident was identical to his condition subsequent to the accident.
However, finding that plaintiff's back condition predated the accident does not end the inquiry. Where the defendant's negligent action aggravates a prior injury, he must compensate the victim for the aggravation. Perniciaro v. Brinch, 384 So.2d 392 (La.1980). Since the trial judge determined that the accident caused the plaintiff's back injury, he did not address to what extent, if any, the accident aggravated plaintiff's prior condition. The judge noted that Dr. Landry stated the plaintiff's physical disability increased from twenty to thirty percent after the accident. However, the additional disability arose as a result of the third operation, an operation that the record indicates was necessary before the accident occurred. Thus, we are unable to find any evidence in the record that plaintiff's back condition was aggravated by the automobile accident. See Fleming v. State Department of Hospitals, 308 So.2d 366 (La.App. 1st Cir.), writ denied, 313 So.2d 238 (La.1975).
*1240 While it is a well established principle of law that a defendant takes his victim as he finds him, it is equally well established that a tort feasor is only liable for the direct and proximate results of his wrongful act. After careful consideration of all the testimony and evidence, it appears that Boudreaux has failed in his burden of establishing by a preponderance that the accident more probably than not, caused or aggravated his back injury. In fact, the medical testimony clearly shows that Boudreaux's physical condition was unaffected by the accident. We find the trial court clearly wrong in concluding that plaintiff's condition was a result of the accident.

Specifications of Error No. 7
The Police Jury asserts that the trial court erred in awarding property damage when such were not prayed for and a timely objection was made to the introduction thereof. The general rule in Louisiana is that pleadings may be enlarged by evidence adduced without objection when such evidence is not pertinent to any issue raised by the pleadings and hence, would have been excluded if objected to timely. LSA-C.C.P. art. 1154; and Webster v. Rushing, 316 So.2d 111 (La.1975).
In the instant matter, Boudreaux attempted to introduce evidence concerning the quantum of property damage he sustained. Such was timely objected to by counsel for the Police Jury. To said objection, the trial court stated:
"Obviously, he is not entitled to recover any damages to the vehicle because he didn't ask for them, but for purposes of showing the severity of the impact, I think it has relevance."
Based upon the foregoing, this court finds the trial court erred in awarding $1,326.80 to Boudreaux for property damage sustained in the accident.

CONCLUSION
For the above and foregoing reasons, judgment of the trial court is reversed. All costs of this appeal are to be assessed against Boudreaux.
REVERSED.