| WALTER I. LANIER, JR., J.,
concurring in part and dissenting in part with reasons.
THE MOODY CLAIM
I concur in the result reached by the majority on the Moody claim and assign the following additional reasons.
The Moody motion was filed on behalf of the Browns by Callahan, but the trial court judgment ordered the clerk of court to give one-third (1/3) of the funds on deposit ($7,666.00) to Callahan. The record does not reflect whether Callahan received the full amount of his fee out of the settlement proceeds. If he did, then the Browns should get the benefit of the Moody recovery rather than Callahan. That amount then can be applied to satisfy Clarendon’s claim against the Browns.
The applicable law provides, in pertinent part, that “[t]he amount of the portion of attorney fees shall be determined by the district court based on the proportionate services of the attorneys which benefited or augmented the recovery from the third party." (Emphasis added.) La. R.S. 23:1103C(1). Clarendon still has not recovered $19,001.15 on its intervention. The sword of justice has two edges, and, thus, cuts both ways. “While the statute admonishes the district court to consider how the services of the attorney benefited the recovery of the intervention, it is implicit in this admonition that the trial court also consider the actions of the attorney that obstructed the recovery in determining the benefit and assessing an appropriate award. The record does not indicate that the trial court did so. The trial court should do so on the remand.
| ¡.CLARENDON’S CLAIMS AGAINST ALLSTATE AND CALLAHAN
The majority opinion uses an abbreviated statement of facts to analyze the case and reach their result. In my opinion, an in-depth analysis of the pleadings, the compromise and judgments pertinent to this appeal is essential to properly render judgment on the issues presented for review.
The Trial Court Judgment on the Merits
The pertinent portion of the trial court judgment[1] on the merits provides as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be Judgment in favor of the plaintiff *878 JESSE BROWN, SR., and against the defendants LARRY GRABERT, JR., GRABERT AND SON MOTOR SERVICE, INC., and ALLSTATE INSURANCE COMPANY, individually and in solido, after giving credit for the comparative fault of the plaintiff, in the amount of ONE HUNDRED EIGHTY-TWO THOUSAND FOUR HUNDRED AND NO/lOO ($182,100.00) DOLLARS, with legal interest thereon from date of judicial demand until paid, and for all court costs of this proceeding.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be Judgment in favor of the plaintiff JUANITA BROWN and against the defendants LARRY GRABERT, JR., GRABERT AND SON MOTOR SERVICE, INC., and ALLSTATE INSURANCE COMPANY, individually and in solido, after giving credit for the comparative fault of the plaintiff, in the amount of NINE THOUSAND FIVE HUNDRED AND NO/100 ($9,500.00) DOLLARS, together with legal interest thereon from date of judicial demand until paid, and for all court costs of this proceeding.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the intervention of CLARENDON NATIONAL INSURANCE COMPANY, in the amount of FORTY-TWO THOUSAND ONE AND 15/100 ($42,001.15) DOLLARS, is recognized and valid, and is to be paid by JESSE BROWN, SR. and JUANITA BROWN on a first priority basis, out of the Judgments that were issued to JESSE BROWN, SR. and JUANITA BROWN, described above.
(Emphasis added)
This language does not properly reflect the legal relationship that exists between the Browns and Clarendon. This language is similar to judgment language that might be used if the legal relationship between the Browns and Clarendon were one of subrogor and subrogee. It is not. The Browns and Clarendon are co-owners.
lain Moody v. Arabie, 498 So.2d 1081, 1085 (La.1986), appears the following:
When an employer pays compensation to a worker who has been injured by the wrongful act of a third person, the employer and the worker become co-owners of a property right consisting of a right to recover damages from the third person. (Emphasis added.)
See also La. C.C. arts. 480 and 797 et seq.; A. Yiannopoulos, Property, 2 Louisiana Civil Law Treatise § 30, pp. 52-54 (4th Ed. 2001). La. C.C. art. 818 provides “The provisions governing co-ownership apply to other rights [besides real rights] held in indivisión to the extent compatible with the nature of those rights.” Thus, the employer and/or his insurer, together with an injured employee, have a co-owned cause of action as a matter of law against the third party tortfeasor who caused the employee’s injuries.
La. C.C. art. 802 provides “As against third persons, a co-owner has the right to use and enjoy the thing as if he were the sole owner.” Revision comment (c) for Article 802 provides, in pertinent part, as follows:
“Thus a co-owner has neither a right to exclusive use nor a right to dispose of the thing without the consent of his co-owners. However, as against third persons, a co-owner has the right to use and enjoy the thing as if he were its sole owner. For example, a co-owner may alone take all the necessary steps for the preservation of the property, including the institution of suits against trespassers or usurpers.” (Emphasis added.)
Thus, La. R.S. 23:1101B provides “Any person having paid or having become obli *879 gated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or becomes obligated to pay as compensation to such employee or his dependents.” See also H. Johnson, Workers’ Compensation Law and Practice, 14 Louisiana Civil Law Treatise § 370, pp. 272-281 (3rd Ed. 1994). Accordingly, the employer and/or his insurer have a right of action as a matter of law to proceed against a third party tortfeasor and/or his insurer for their losses. Further, pursuant to La. C.C. art. 799, “A co-owner is liable to his co-owner for any damage to the thing held in indivisión caused by his fault.” (Emphasis added.)
|4It is a basic right of a co-owner (owner in indivisión) to partition the commonly owned property. Partition is the way that co-ownership is converted into sole ownership. Partition is a sort of exchange that co-owners make among themselves, wherein one gives his right of ownership in part of the commonly owned thing to another co-owner in return for the other co-owner doing the same in his favor for part of the property. See La. C.C. art. 807; see also Amoco Production Company v. Thompson, 516 So.2d 376, 388 (La.App. 1 Cir. 1987), writ denied, 520 So.2d 118 (La.1988). In workers’ compensation cases, the partition of the damage recovery on the eo-owned cause of action by the employee and employer and/or his insurer is provided for in La. R.S. 23:1103A(1) as follows:
In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually 'paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer for compensation shall cease for such part of the compensation due, computed at six percent per annum, and shall be satisfied by such payment. (Emphasis added).
The total damage award in favor of the Browns and Clarendon was $191,900.00 ($182,400.00 for Mr. Brown; $9,500.00 for Mrs. Brown). Of this amount, Clarendon was a co-owner of a principal sum of $42,001.15 and, pursuant to law, was entitled to its partitioned share by preference and priority. The Brown’s principal sum share after the partition was $149,898.85 ($191,900.00 minus $42,001.15). Thus, the judgment on the merits should have been in favor of the Browns for a principal sum of $149,898.85 and in favor of Clarendon in a principal sum of $42,001.15.[2]
|fiThe Compromise
After judgment on the merits was rendered, there were negotiations between the attorney for the Browns and the attorneys for the Graberts, Allstate and Lincoln. On October 2, 1997, Stephen P. Callahan, the Browns’ attorney, sent a letter to Randall Bethancourt, the attorney for the Graberts, and their primary insurer, Allstate Insurance Company (Allstate). That letter states, in pertinent part:
*880 “This will confirm that the Browns have agreed to accept $205,000.00 in settlement of their claims against Allstate Insurance Company, Lincoln Insurance Company and their insureds. This will also confirm, that the Browns are responsible for settlement of Clarendon’s intervention, and that the settlement funds will be in my possession no later than October 10, 1997.” (Emphasis added.)
This letter was filed in evidence as Allstate Exhibit 1.
Also, on October 2, 1997, Bethancourt sent a letter to Callahan that states, in pertinent part:
“This matter is settled in full. All of the defendants shall pay the total sum of $205,000.00 to the plaintiffs, Jesse Brown and Juanita Brown, in complete and full settlement of this matter. Clarendon’s intervention award shall be satisfied from this amount. If the above is incorrect, kindly so advise immediately.” (Emphasis added.)
This letter was filed in evidence as Allstate Exhibit 2.
On October 10,1997, the Browns formally entered into a compromise contract with all defendants. The judgments against all defendants were settled for $205,000.00. The compromise contract provided that the Browns would pay the “Clarendon ... award” “from the $205,000.00 received this date”, and granted a hold harmless in favor of “all parties herein”.
Clarendon was not a party to this contract and its rights were not affected by it. The letters between Bethancourt and Callahan and the compromise agreement filed in evidence make it clear that the Browns contractually agreed to be responsible for paying Clarendon’s judgment.
Allstate and Lincoln then performed their obligations under the compromise contract. A letter from Bethancourt to Callahan dated October 10, 1997, states, in pertinent part:
| /‘Enclosed please find the following documents:
1) Allstate check no. 96551985 in the amount of $170,000.00;
2) Lincoln check no. 000567 in the amount of $35,000.00;
3) Original and two (2) copies of the Receipt and Release of All Claims;
4) Original and one (1) copy of the Satisfaction of Judgment; and
5) Original and one (1) copy of the Motion and Order of Dismissal.
Please have your clients execute the enclosed and return to me the original and one (1) copy of the Receipt and Release of All Claims and please sign the Motion and order of dismissal and Satisfaction of Judgments. The checks are being sent to you in trust: Do not endorse or have your clients endorse these checks until all the settlement papers have been properly executed.” (Emphasis added).
This letter and the checks were filed in evidence as Allstate Exhibits 3, 4 and 5.
Both checks were made payable to the Browns and Callahan. Clarendon was not a named payee on the checks.
Callahan deposited the $205,00.00 into his trust account. He later disbursed funds to the Browns. He did not disburse any of the funds to Clarendon. However, he did retain $25,00.00 in his trust account for Clarendon. On January 12, 1998, Callahan gave the $25,000.00 he was holding in trust for Clarendon to the Browns. The record does not reflect what amount of the funds Callahan received as his fee.
As previously indicated, Clarendon was not a party to the October 10, 1997 contract of compromise. Clarendon did not give written approval to the compromise. *881 Accordingly, pursuant to La. R.S. 23:1103A(2), the compromise did not bind or affect the rights of Clarendon. However, the failure of the Browns and Allstate to get written approval of the compromise from Clarendon has significant consequences for them.
The consequences for the Browns are set forth in La. R.S. 23:1102B as follows:
If a compromise with such third person is made by the employee or his dependents, the employer or insurer shall be liable to the employee or his dependents for any benefits under this Chapter which are in excess of the full amount paid by such third 17person, only after the employer or the insurer received a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim and only if written approval of such compromise is obtained from the employer or insurer by the employee or his dependent, at the time of or prior to such compromise.
[[Image here]]
If the employee or his dependent fails to notify the employer or insurer of the suit against the third person or fails to obtain written approval of the compromise from the employer and insurer at the time of or prior to such compromise, the employee or his dependent shall forfeit the right to future compensation, including medical expenses. Notwithstanding the failure of the employer to approve such compromise, the employee’s or dependent’s right to future compensation in excess of the amount recovered from the compromise shall be reserved upon payment to the employer or insurer of the total amount of compensation benefits, and medical benefits, previously paid to or on behalf of the employee, exclusive of attorney fees arising out of the compromise; except in no event shall the amount paid to the employer or insurer exceed fifty percent of the total amount recovered from the compromise. Such reservation shall only apply after the employer or insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim. (Emphasis added.)
The consequences for Allstate are set forth in La. R.S. 23:1102C(1) and (2) as follows:
(1) When a suit has been filed against a third party defendant in which the employer or his insurer has intervened, if the third party defendant or his insurer fails to obtain unitten approval of the compromise from the employer or his insurer at the time of or prior to such compromise and the employee fails to pay to the employer or his insurer the total amount of compensation benefits and medical benefits out of the funds received as a result of the compromise, the third party defendant or his insurer shall be required to reimburse the employer or his insurer to the extent of the total amount of compensation benefits and medical benefits previously paid to or on behalf of the employee to the extent said amounts have not been previously paid to the employer or his insurer by the employee pursuant to the provisions of Subsection B of this Section. Notwithstanding such payment, all rights of the employer or his insurer to assert the defense provided herein against the employee’s claim for future compensation or medical benefits shall be reserved.
*882 (2) Nothing herein shall be interpreted to affect the rights of the employer or his insurer to otherwise seek reimbursement for past or future compensation benefits and medical benefits against a third party defendant or his insurer without regard to the actions of the employee on whose behalf said compensation and medical benefits were paid.
(Emphasis added).
Further, the $205,000.00 given in return for the compromise of the judgment on the co-owned cause of action was subject to the partition provided |Rfor in the judgment on the merits. Thus, $42,001.15 was solely owned by Clarendon and $162,998.85 was solely owned by the Browns. Callahan, by the agreement of all parties but Clarendon, became a depositary of these funds when they were deposited in his trust account. When he disbursed these funds to the Browns (and possibly to himself), he did so without the consent of Clarendon. Although Clarendon solely owned $41,001.15 of these funds, it received none from Callahan.[3]
Finally, because the Graberts and Allstate did not get prior written approval for the compromise from Clarendon, pursuant to La. R.S. 23:1102C, they “shall be required to reimburse the employer or his insurer to the extent of the total amount of compensation benefits and medical expenses previously paid to or on behalf of the employee .... ”
A letter dated January 15, 1998, from Bethancourt to Callahan reads in pertinent part:
“This letter will confirm and put in writing the contents of our telephone conversation of this morning with reference to the above entitled and captioned matter.
As per our conversation, I am in receipt of a letter addressed to you and me from Michael Triay dated January 14, 1998, advising that you have not paid the intervention in this matter.
I kindly call your attention to various correspondences concerning the plaintiffs’ paying the intervention out of the settlement funds. I enclose herewith a copy of your letter to me dated October 2, 1997, wherein you confirmed that the Browns would be responsible for the payment of Clarendon’s Intervention from the settlement of $205,000.00.
I further call your attention to the Receipt and Release that your clients signed on October 10, 1997, wherein your clients agreed to pay from the $205,000.00 received Clarendon National Insurance Company Intervention award. They further agreed to ‘defend, protect, indemnify and hold harmless each and all of the parties released.’
| ¡Accordingly, demand is hereby made upon your clients to pay this intervention amount immediately. My client stands ready to enforce the Receipt and Release and shall expect Jesse Brown, Sr. and Juanita Brown to defend, pro *883 tect and indemnify and hold Allstate harmless from any future action in this matter, including but not limited to attorney’s fees, court costs, sanctions and interest.
I do trust that you will take care of this matter immediately.”
This letter was introduced into evidence as Allstate Exhibits 7 and 8.
A letter dated January 22, 1998, from Callahan to Bethancourt reads, in pertinent part:
“Mr. Brown has contacted me and indicated he is amenable to depositing the $25,000.00 remaining proceeds into the registry of the court pending settlement of Clarendon’s intervention. He has asked that you contact him directly to make arrangements for same .... I do NOT represent Mr. Brown any longer and am unaware of whether he has retained other counsel.” (Emphasis added.)
This letter was introduced into evidence as Allstate Exhibit 9.
Clarendon’s Pleading to Collect on its Judgment
On January 16, 1998, Clarendon filed a pleading, the body of which provided as follows:
AND NOW into Court, through undersigned counsel, comes intervenor, Clarendon National Insurance Company, who moves the Court for an Order enforcing the Judgment rendered in the above entitled and numbered cause, and for an order requiring the plaintiffs and counsel for plaintiffs to acknowledge receipt of the payment of full judgment from Allstate Insurance Company and to now satisfy the judgment on the intervention. In the alternative, interve-nor seeks an order requiring Allstate to deposit the full amount of the judgment on the intervention in the registry of the Court, including interest and costs, within ten (10) days of the hearing on this motion. Intervenor is also entitled to attorney’s fees, costs and sanctions for the bringing of this Motion. (Emphasis added.)
The prayer and order attached to this pleading provides as follows:
ORDER
Considering the foregoing Motion;
IT IS ORDERED that plaintiffs, Jesse Brown, Sr. and Juanita Brown, and their attorney, Stephen P. Callahan, and defendant, Allstate Insurance Company, appear and show cause the 13th day of February, 1998 at 9:00 o’clock a.m. why the judgment rendered against them[4] on the intervention of Clarendon ^JjjNational Insurance Company should not be enforced, and plaintiffs, their counsel and Allstate Insurance Company be ordered to immediately■ satisfy the judgment on the intervention and pay intervenor’s attorney’s fees, costs and sanctions for the bringing of this Motion. (Emphasis added.)
This pleading requested service: (1) on the Browns, through their attorney Callahan; (2) on Callahan individually; and (3) on Allstate through its attorney Bethanc-ourt. A certificate of service on this pleading dated January 15, 1998, states that “a copy of the above and foregoing has been forwarded to all counsel of record” via the U.S. Mail.
This pleading is a summary proceeding. The rules of procedure for summary proceedings are set forth in La. C.C.P. art. 2591 et seq. Article 2592 has an exclusive *884 listing of the types of matters for which summary proceedings may be used. A motion to enforce a judgment or assert a new cause of action is not one of them. The procedures for the execution of judgments are provided for in Book IV of the Code of Civil Procedure, La. C.C.P. art. 2251 et seq. Pursuant to Article 2593, an answer is not required to a summary proceeding, but exceptions may be filed. Pursuant to Article 2594, citation and service thereof are not necessary, but a copy of the summa'ry pleading, assigning the date and hour of the trial thereof, shall be served upon each defendant. Finally, Article 2596 provides “The rules governing ordinary proceedings are applicable to summary proceedings, except as otherwise provided by law.”
It is arguable that all of the defendants in this summary proceeding could have asserted that this proceeding was an unauthorized use of a summary proceeding and is an objection that can be raised by a dilatory exception. La. C.C.P. art. 926A(3). It is also arguable that Allstate and Callahan could have asserted that this proceeding had an improper cumulation of actions because they were not cast in the intervention judgment and Callahan was not even a party in the suit. La. C.C.P. art. 926A(7). However, no exceptions were filed prior to the hearing in this matter on February 13, 1998. These objections must be raised in a dilatory exception that is timely filed; these objections were waived Nwhen the trial of this matter commenced. La. C.C.P. art. 2593. See also La. C.C.P. arts. 926B, 928 and 933.
Clarendon’s motion for the summary proceeding does not allege facts that show causes of action against either Allstate or Callahan. However, La. C.C.P. art. 1154 provides, in pertinent part, as follows:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues....
(Emphasis added.)
Official Revision Comment (b) for Article 1154 provides, in pertinent part, as follows:
It is well settled that the pleadings may be enlarged by evidence adduced without objection, which is not pertinent to any of the issues raised by the pleadings, and hence would have been excluded if objected to timely....
See also Fitzgerald v. Tucker, 98-2313, p. 9 (La.6/29/99) 737 So.2d 706, 715; Hopkins v. American Cyanamid Company, 95-1088, p. 13 (La.1/16/96) 666 So.2d 615, 623; see Boudreaux v. Terrebonne Parish Police Jury, 477 So.2d 1235, 1240 (La.App. 1 Cir.1985). The evidence presented without objection at the trial of Clarendon’s summary proceeding reveals causes of action against Allstate and Callahan. Further, even if Alstate and/or Callahan had filed a peremptory exception raising the objection of no cause of action and the exception was sustained, pursuant to La. C.C.P. art. 934, which applies to summary proceeding pursuant to La. C.C.P. art. 2596, when the grounds of the objection may be removed by amendment, the judgment sustaining the exception shall order such amendment within the delay allowed by the court.
The Trial of the Motion
The trial of the motion was held on February 13, 1998. The court minutes for that date and the transcript of the trial show that nine (9) items of documentary *885 evidence (previously referenced herein) were filed into evidence and the testimony of Callahan was taken. The minutes and transcript also show l^the following appearances at the trial: (1) Callahan; (2) Dexter Gary as attorney representing Callahan; (3) Bethancourt representing Allstate; (4) Michael Triay representing Clarendon; and (5) Jesse Brown, Sr. in proper person. The transcript shows that Callahan was personally served with a copy of the summary pleading.
During Callahan’s testimony, the only objection asserted was a claim of the attorney-client privilege raised by Callahan when he was asked how much money he retained in his trust account to pay the Clarendon intervention judgment. The trial court overruled the objection, and this issue has not been raised on appeal. The evidence produced at this trial supports all of the facts heretofore set forth in this opinion.
The following are pertinent excerpts from Callahan’s testimony:
Q. Okay. Mr. Callahan, you in fact had the funds in your possession on October 10, 1997, $205,000, correct?
A. It was in my trust account. Once they were delivered to me, they were placed in my trust account.
[[Image here]]
Q. And would you agree with me that there was a dispute as to how much should be paid to Clarendon; you were still in the middle of negotiating a settlement?
A. I think there was a dispute, yes, sir.
Q. All right. Did you withhold any sums in any trust accounts?
A. After speaking to Mr. Triay on the fourteenth and speaking with my clients on the fourteenth, I withheld a sum specified by my client in my trust account with an agreement that I would attempt or I would use those funds to attempt to settle the intervention.
[[Image here]]
THE COURT:
I think we’re getting beyond the question that was asked. You had previously testified that you and your client had discussed a certain sum of money to be put in your trust account.
MR. CALLAHAN:
Yes, sir.
THE COURT:
And he was asking how much did you put in your trust account.
MR. BETHANCOURT:
That’s my question.
MR. CALLAHAN:
Well, the answer judge is $25,000, as revealed to counsel in the letter of January 22,1998 -
THE COURT:
Okay.
MR. CALLAHAN:
which is marked as Allstate Exhibit 9. That was an easier way, Randy, I guess. Since it’s already been communicated.
|13BY MR. BETHANCOURT:
Q. So when was the 25,000, just to make it clear.
A. At the time of disbursement, October U, 1997.
Q. And you will agree with me that that — that the case was not settle [sic] between the plaintiff and Clarendon at that time; is that true?
A. That is correct.
[[Image here]]
THE COURT:

*886
Do you still have the money that you put in your trust account?

MR. CALLAHAN:

No, sir, it was pursuant to Mr. Brown’s request, on January 12, transmitted to Mr. Brown along with correspondence advising of the necessity of corresponding with the intervenor.

(Emphasis added.)
In his testimony, Callahan admits the following pertinent facts. In October of 1997, he received the $205,000.00 in settlement funds and deposited it in his trust account. (Clarendon owned $42,001.15 of these funds, and the Browns owned $162,998.85.) Several days later, and without Clarendon’s consent, he retained $25,000.00 of the funds belonging to Clarendon and disbursed the rest of the funds to the Browns (or to the Browns and himself). (This means that Callahan disbursed $17,001.15 [$42,001.15 minus $25,000.00] of funds owned by Clarendon to a person or persons to whom they did not belong.) Subsequently, on January 12, 1998, Callahan gave Clarendon’s $25,000.00 to the Browns. Other evidence presented at a subsequent hearing shows the Browns only deposited $23,000.00 into the registry of the court. Thus, Clarendon is still entitled to collect an additional $19,001.15.
The trial court’s oral reasons for this judgment provide, in pertinent part:
“As an attorney, when we handle funds, if there’s any multiple claims to money in our possession, we do not have the liberty to just give it to whom we choose. That was a bad judgment decision at that point.
The money, part of that money, whatever the amount of money was, Clarendon owned part of that money, because it was recognized in the judgment. Everyone was aware of it. It’s specifically provided in the judgment. That Clarendon National Insurance Company in the amount of $42,001.15 was recognized as valid and to be paid by Jesse Brown, Sr. and Juanita Brown on a first priority basis out of the judgments that were issued to Jesse Brown, Jr. and Juanita Brown. So it wasn’t just Jesse Brown’s money. It was also Clarendon’s money. And as attorneys we have a duty and responsibility to protect all interest in the money that we’re holding.
lul’m not sure why this did not cross your mind, but the normal and orderly procedure that is customarily used is if a dispute arises as to. the rightful ownership or percentage of monies we’re holding, the attorney is duty bound to initiate a concursus proceeding and deposit the money into the registry of the court, until all disputes are finalized. We do not have the liberty to just give the money away. So-1 think that was an error.
[[Image here]]

I’m going to reserve the right to Allstate and Clarendon to pursue Mr. Callahan at some future time if the money for some reason disappears.

I’m also reserving the right to Clarendon -to pursue Allstate Insurance Company to make them deposit the money. First we’re going to see if we get the money deposited by Mr. Brown. And if Mr. Brown does not deposit it today then I will entertain another motion by Clarendon requesting an order for Allstate and Mr. Callahan to deposit the money.
[[Image here]]
Clarendon’s motion ask [sic] an order requiring the plaintiffs and counsel for plaintiffs to acknowledge receipt of the payment of full judgment from Allstate Insurance Company and now to satisfy *887 the judgment on the intervention. In the alternative, intervenor seeks an order requiring Allstate to deposit the full amount of the judgment on the intervention, because Allstate was also subject to the judgment recognizing the priority of the intervention.
The evidence indicates that Mr. Brown has the money. "What the court is going to do is the court is going to order Mr. Brown to immediately deposit $42,001.15 into the registry of the court, of the clerk of court, which is Mr. I. Robert Boudreaux, for safekeeping. Reserving to all parties the right to litigate any credits or claims or alleged compromises with the intervenor, future proceedings in this matter.
[[Image here]]
I’m going to reserve the right to Allstate and Clarendon to pursue Mr. Callahan at some future time, if the money for some reason disappears. I’m also reserving the right to Clarendon to pursue Allstate Insurance Company to make them deposit the money. First we’re going to see if we get the money deposited by Mr. Brown. And if Mr. Brown does not deposit it today, then I will entertain another motion by Clarendon requesting an order for Allstate and Mr. Callahan to deposit the money.
(Emphasis added.)
On March 2, 1998, the trial court signed a judgment that provided as follows:
“IT IS ORDERED, ADJUDGED, AND DECREED that Stephen Callahan, Esq. is allowed to withdraw as counsel of record for Jesse Brown, Sr., and;
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiff herein, Jesse Brown, Sr., is to deposit on February 18, 1998 the sum of $42,001.15, Clarendon’s intervention herein, into the registry of the Clerk of Court reserving to all parties the right to litigate any credits or claims with intervenor, and further reserving \ Mhe right to Clarendon National Insurance Company to compel Stephen Callahan and/or Allstate Insurance Company to deposit said amount in the event that plaintiff herein, Jesse Brown, Sr., fails to do so for any reason whatsoever; and;
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that costs of these proceedings are accessed [sic] to Jesse Brown, Sr. and Stephen Callahan, Esq. and that attorney’s fees in the amount ,of $500 are assessed in favor of Allstate Insurance Company and against Jesse Brown, Sr. and Stephen Callahan, and attorney’s fees in the amount of $500 are assessed in favor of Clarendon National Insurance Company and against Jesse Brown, Sr., and Stephen Callahan, Esq., and;” (Emphasis added.)

The part of this judgment that pertains to the Clarendon intervention claim is interlocutory and not appealable.

The Trial Court Final Judgment
The interlocutory judgment of the original trial court judge specifically states that the judgment is “reserving the right to Clarendon ... to compel ... Callahan and/or Allstate ... to deposit said amount [$42,001.15] in the event that plaintiff ... Brown ... fails to do so for any reason whatsoever; ...” (Emphasis added.) The operative language of this judgment is clear and unambiguous; Clarendon had the right to compel Callahan and Allstate to deposit the money owed to Clarendon.if Brown failed to do so. In his reasons for judgment, the trial court judge specifically stated “I’m reserving the right to Clarendon to pursue Allstate ... to make them *888 deposit the money.” Neither Callahan nor Allstate challenged this judgment.
On May 7, 1998, Clarendon exercised the right granted to it in the March 2,1998 Judgment and filed a summary proceeding entitled “Motion to Enforce Judgment And For Sanctions” that states as follows:
“AND NOW into Court, through undersigned counsel, comes intervenor, Clarendon National Insurance Company, who moves the Court for an Order compelling Allstate Insurance Company and/or Stephen Callahan, Esq. to deposit the sum of $19,001.15 into the registry of the Court, said amount representing the prior Judgment amount still unpaid to mover after the deposit into the registry of $28,000 by plaintiff, Jesse Brown, Sr.”
It is arguable that the judgment referred to in the caption of this pleading is the March 2, 1998 judgment and not the original judgment on the merits.
hfiOn November 24, 1999, the trial court held a hearing on Clarendon’s motion to enforce judgment. The pro tempore trial court judge who heard the motion gave a verbal ruling ordering the dismissal of Clarendon’s motion. No evidence was taken at this hearing on the Clarendon claim; only oral argument was given. This motion apparently was tried on the face of the existing record.
On April 5, 2000, a third trial court judge signed the judgment that is here on appeal that provided, in pertinent part, as follows:
“IT IS ORDERED, ADJUDGED, AND DECREED that judgment is rendered in favor of Allstate Insurance Company and Stephen Callahan, and against Clarendon National Insurance Company, denying the Motion to Enforce Judgment and for Sanctions filed in this proceeding by Clarendon National Insurance Company on May 7, 1998.
The trial court final judgment does not state whether the dismissal is with or without prejudice as required by La. C.C.P. art. 1844. See also La. C.C.P. art. 1673. The majority opinion perpetuates this error. Pursuant to the res judicata provisions of La. R.S. 13:4231 whether the dismissal is with or without prejudice is very significant. If the judgment is not reversed, this action should be dismissed without prejudice so that justice will have an opportunity to prevail.
Finally, the trial court erred by failing to grant Clarendon the relief to which it was entitled pursuant to the facts presented in evidence. La. C.C.P. art. 1154 must be construed with La. C.C.P. art. 862 which states, in pertinent part, that “[a] final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.” (Emphasis added.) Official Revision Comment (b) for Article 862 provides, in pertinent part, as follows:
Even more important, this article, together with Art. 1154, infra, suppresses the harsh and unduly technical “theory of the case” doctrine in Louisiana, under which the litigant must select a theory of his case or defense and adhere to it throughout the litigation and which has been severely criticized.
The majority opinion fails to consider Article 862.
117The Majority Opinion
The majority state that “[f]or this court to find Mr. Callahan or Allstate hable on the basis of a duty to insure Clarendon received its payment, a provision of the settlement, or the right to sue under La. R.S. 23:1101B, would require this court to make credibility deteminations not con *889 sidered or decided by the court below.” (Emphasis added.)
My review of the transcript of the February 13, 1998 hearing and the original trial judge’s reasons for judgment indicates that the trial court considered the evidence presented, made credibility calls and decided issues based on- the evidence.[5] (1) The trial judge discussed an attorney’s duty of care and fidelity when he has possession of funds belonging to a third person (like Clarendon) as provided for in Rule 1.15(a) and (b) of the Rules of Professional Conduct. He stated that pursuant to the judgment, Clarendon owned $42,001.15 of the reward. This is a finding of fact. He stated that “[a]s attorneys we have a duty and responsibility to protect all interest in the money we’re holding.” This is a statement of law. He concluded by stating that “[w]e do not have the liberty to just give the money away. So I think that was an error.” This is not only a factual finding, it also is a finding of fault. (2) It is implicit in these statements, and by the judgment that ordered the Browns to deposit $42,001.15 into the registry of the court, that the trial court judge rejected any assertion that Clarendon’s claim had been compromised. This is a finding of fact. (3) The trial court judge specifically stated that “[t]he evidence indicates Mr. Brown has the money.” This is a finding of fact. (4) The trial court sanctioned Jesse Brown, Sr. and Callahan with attorney fee awards in favor of Allstate and Clarendon in the sum of $500.00 each. This can only be done if there is a factual basis to support it. The record does not reflect the basis for these sanctions; conversely, they were not challenged by review.
|1RThe majority states that “[M]r. Callahan and Allstate did not have fair notice that Clarendon was attempting to pursue a separate action against them for damages based on tort, contract, or other applicable law, not raised in Brown’s tort suit.” I do not agree with this observation for the following reasons. The Clarendon summary proceeding specifically names Callahan and Allstate as parties defendant. Clarendon specifically requested service of the summary proceeding on Callahan individually and on Allstate. Callahan was personally served. Clarendon requested “an order requiring the ... counsel for plaintiffs [Callahan] to acknowledge receipt of the payment of full judgment from Allstate ... and to now satisfy the judgment on the intervention.” (Emphasis added.) Clarendon also requested “an order requiring Allstate to deposit the full sum of the [Clarendon] judgment on the intervention in the registry of the court ....” These allegations put Callahan and Allstate on notice that they were at risk. The Clarendon summary proceeding was filed on January 16, 1998, and heard on February 13, 1998. Although authorized to do so by La. C.C.P. art. 2593, Callahan and Allstate did not file any exceptions to the pleading. Pursuant to La. C.C.P. art. 927B and 2163, an objection of no cause of action could have been raised by a party in the trial court or in this court; the trial court or this court could have raised the objection on its own motion; this has not been done. Prior to the trial of the summary proceeding, neither Callahan nor Allstate requested a continuance. During the trial, neither requested a recess to a later date. At the trial, Callahan, an attor *890 ney having 13 years experience at the time, was represented by competent counsel. Allstate, a sophisticated litigator with extensive experience, also was represented by counsel. All of the documentary evidence was filed without objection. Only one serious objection was made during Callahan’s testimony and it was correctly overruled. The evidence introduced at the trial obviously was designed to establish fault by Callahan and Allstate.
The only way the majority can have a valid rationale for their result is to either (1) find that La. C.C.P. art. 1154 does not apply to the facts of this case; |1flor (2) find La. C.C.P. art. 1154 is unconstitutional as applied to this case. As previously indicated herein, they have failed at showing the former. The following is a discussion of why they also have failed at demonstrating the latter.
The majority observe as follows:
Certainly, pleadings may be amended, and even enlarged. La. C.C.P. arts. 1151, et seq. However, a motion to enforce a prior judgment cannot be “amended” into a new suit that results in a new and different judgment for damages in disregard of due process rights to fair and reasonable notice and hearing. (Emphasis added.)
Obviously this is a claim that La. C.C.P. art. 1154, as applied to the facts of this case, violates “due process rights” and is unconstitutional. The majority do not cite what constitutional due process, federal, state, or both, or procedural or substantive, they are referring to, and they cite no jurisprudence to support their holding.
Neither Callahan nor Allstate raised a due process issue in the trial court or in this court. In State v. Brewster, 2000-1266 (La.6/30/00), 764 So.2d 945, the Louisiana Supreme Court specifically held that this court erred in reaching an issue of the constitutionality of a statute on our own motion when the issue was not raised by the parties. The judgment of this court was vacated and set aside. In Istre v. Meche, 2000-1316 (La.10/17/00), 770 So.2d 776, the court held that a court should not reach the question of a statute’s constitutionality when its unconstitutionality has not been placed at issue by one of the parties to the proceeding, and that the unconstitutionality of a statute must be specially pleaded [by a party] and the grounds for the claim particularized. The majority opinion violates this jurisprudence.
The facts established by the evidence adduced at the trial show the grounds upon which Callahan and Allstate are ha-ble to Clarendon. The majority now cannot validly assert procedural or substantive defenses for Callahan and Allstate when they did not timely do so for themselves under the facts and circumstances of this case. Callahan and Allstate had adequate notice, had a fair hearing, were represented by counsel, had an opportunity to present procedural [ gnand substantive defenses, had a right to request a continuance or a recess, and, accordingly, had due process. The majority holding to the contrary is wrong as a matter of fact and law. The majority opinion quantifies the particular facts of this case as not being subject to numerous provisions of the Code of Civil Procedure. It also resurrects defenses that have been waived and/or not timely raised by the defendants, and asserts them on behalf of the defendants to justify the result reached. In my opinion, this is amazing, if not unique, jurisprudence.
LIABILITY OF ALLSTATE
As previously noted herein, La. R.S. 23:1102C(1) provides, in pertinent part, that “[i]f the third party defendant [the Graberts] or his insurer [Allstate] fails to *891 obtain written approval of the compromise from the employer or his insurer [Clarendon] at the time of or prior to such compromise and the employee [Brown] fails to pay to the employer or his insurer [Clarendon] the total amount of compensation benefits and medical benefits out of the funds received as a result of the compromise, the third party defendant or his insurer [Allstate] shall be required to reimburse the employer and his insurer [Clarendon] to the extent of the total amount of compensation benefits and medical benefits previously paid to or on behalf of the employee to the extent said amounts have not been previously paid to the employer or his insurer by the employee pursuant to the provisions of Subsection B of this Section.” (Emphasis added.) The evidence introduced at the trial of the motion shows that Allstate and the Gra-berts failed to get written approval for the compromise from Clarendon; neither the Browns, nor anyone else, paid the Clarendon intervention claim; and Clarendon has proved that Allstate is liable to it for the balance due on its claim.
LIABILITY OF CALLAHAN
The documentary evidence and Callahan’s testimony show that Callahan and the Browns acted together to (1) violate the trial court judgment insofar as it provides for payment of the Clarendon intervention; (2) breach the contract of compromise and by failing to pay Clarendon its money by preference and priority out of the proceeds of the compromise; and (3) violate La. R.S. 23:1102B by [^failing to get the written approval of Clarendon for the compromise contract.. Ordinarily, an attorney does not owe a legal duty to his client’s adversary when acting on his client’s behalf. Penalber v. Blount, 550 So.2d 577, 581 (La.1989). Ordinarily, a non-client cannot hold his adversary’s attorney personally hable for either malprae-tice or negligent breach of a professional obligation. Penalber, 550 So.2d at 581. However, intentionally tortious actions, ostensibly performed for a client’s benefit, will not shroud an attorney with immunity. Consequently, even though an attorney does not generally owe a duty to his chent’s adversary, under the broad ambit of La. C.C. art. 2315, an attorney may be held personally accountable for his intentional tortious conduct. Penalber, 550 So.2d at 582; La. C.C. art. 2324A. Clarendon has a cause of action under this duty and proved that Callahan breached that duty.
Additionally, Callahan’s obligations pursuant to the contract of compromise are analogous to that of a conventional seques-trator. La. C.C. art. 2973 et seq. When he received the compromise funds, he bound himself to restore them to the party or parties to whom they were adjudged. La. C.C. art. 2973 and 2977.
Finally, Callahan owed a duty to Clarendon pursuant to Rule 1.15(a) and (b) of the Rules of Professional Conduct that provides, in pertinent part, as follows:
(a) A lawyer shall hold property of ... third persons that is in a lawyer’s possession in connection with a representation separate from the lawyer’s own property. Funds shall be kept in a separate account maintained in a bank or similar institution in the state where the lawyer’s office is situated or elsewhere with the consent of ... the third person. ... Complete records of such account funds ... shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
(b) Upon receiving funds ... in which a ... third person has an interest, a lawyer shall promptly notify the ... third person ... Except as stated in this rule *892 or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the ... third person any funds ... that the ... third person is entitled to receive and, upon request by the ... third person, shall promptly render a full accounting regarding such property. (Emphasis added.)
See also Shaw v. Everett, CA-8615 (La.App. 4 Cir. 1988), 582 So.2d 195 cited in Penalber, 550 So.2d at 582. Callahan also breached this duty.
[ ^Clarendon has proved that Callahan is hable to it for the balance due on its claim.
CONCLUSION
When all of the procedural and substantive errors are stripped away from this case, it is simple.
1. Clarendon has a valid judgment in its favor for $42,001.15;
2. The combined acts, and failures to act, of the Browns, Callahan and Allstate have improperly deprived Clarendon of its money;
3. There is sufficient evidence of record to properly adjudicate this case; and
4. This court should proceed to do so.
It is my opinion that Clarendon has been deprived of money to which it is legally entitled. This is an injustice that should be addressed by the Louisiana Supreme Court.
For the foregoing reasons, I respectfully dissent in part.

. The judgment in favor of Clarendon does not grant Clarendon its proportionate share of the legal interest accrued on the judgment or its share of the court costs. Clarendon did not contest this and, thus, has waived these claims.

. Clarendon did not object to the form of the judgment; and, thus, waived the objection.

. Callahan has asserted on occasion that the Clarendon intervention claim was compromised. No documentary evidence has been filed in the record to verify this assertion. It was not compromised to the satisfaction of the original trial court judge when he rendered the original judgment, because he rendered judgment for the full amount of Clarendon's recovery and that judgment is now res judicata. It was not compromised to the satisfaction of the original trial court judge when he rendered his judgment on the first motion to enforce judgment, because he ordered Mr. Brown to deposit the full amount of Clarendon's recovery into the registry of the court. It was not compromised to the satisfaction of the pro tempore judge when he heard the second motion to enforce judgment, because he verbally indicated that he did not think there was compliance with La. C.C. art. 3071.

. This prayer erroneously states that the judgment rendered on Clarendon's intervention in the original trial court judgment was against Callahan and Allstate; it was not.

. The trial court's reasons for judgment indicate he made a credibility call and believed Callahan’s testimony. My review of Callahan’s testimony and the record shows that this credibility call is not manifestly erroneous. To his great credit, Callahan was forthright and intellectually honest in his testimony, even though some of his testimony involved declarations against his own best interest.